**Paul L. WYATT, Plaintiff-Appellee, Cross-Appellant,**

v.

**PENROD DRILLING CO., and Offshore Food Services, Inc., Defendants-Appellants, Cross-Appellees.**

No. 83–3501.

United States Court of Appeals, Fifth Circuit.

July 9, 1984.

Rehearing Denied Aug. 27, 1984.

Bailey & Leininger, B. Ralph Bailey, Samuel J. Muldavin, Metairie, La., for defendants-appellants, cross-appellees.

Paul S. Minor, Judy M. Guice, Biloxi, Miss., for plaintiff-appellee, cross-appellant.

Before CLARK, Chief Judge, JOLLY and DAVIS, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

The defendants in this maritime personal injury case argue that the district court erred in permitting the plaintiff to introduce evidence on the issue of maintenance and cure, despite pretrial settlement of this issue, and in failing to instruct the jury that the plaintiff was a supervisor who therefore had more responsibility than the average seaman for his own safety. We affirm the district court's rulings on these issues.

On cross-appeal, the plaintiff argues that the district court erred in failing to award him prejudgment interest as provided by the Louisiana civil code. We find that, although the plaintiff invoked diversity jurisdiction in his complaint, the case was tried under admiralty principles only. Applying admiralty law, we hold that the decision not to award prejudgment interest was proper.

I.

The plaintiff, Paul Wyatt, was an employee of Offshore Food Services, Inc. (Offshore), from 1977 until 1981. Offshore supplies catering services, including kitchen personnel, for offshore drilling operations. In September 1981, Wyatt was serving as a kitchen steward aboard the PENROD 54, a drilling rig owned by Penrod Drilling Company (Penrod).

On the PENROD 54, Wyatt and three other Offshore employees shared sleeping quarters which contained two upper and two lower bunks. At most hours someone was sleeping in the shared quarters because the four men worked different shifts. In order not to disturb their sleeping cabinmates, the men often got in and out of their bunks without turning on any of the lights in the quarters. Wyatt occupied one of the upper bunks, which were not equipped with ladders. He usually jumped from his bunk to the floor so that he would not step on the man sleeping in the bunk below him.

On the morning of September 24, 1981, Wyatt was awakened by another crew member about 4:00 a.m. so that he could begin his shift. As was his custom, Wyatt hopped from the side of his bunk in the dark. On this occasion his foot struck a chair which had been placed near his bunk after he had gone to bed the night before. Hitting the chair caused Wyatt to lose his balance and to twist his back. Within a few minutes, Wyatt was incapacitated by the pain of his injury.

Wyatt was hospitalized for six weeks because of his back injury. Now, after surgery to remove a ruptured disk, he is twenty percent permanently disabled and cannot perform any work which requires him to lift heavy objects, bend his back or

sustain a position for four or five hours. By the time of trial he had spent $16,919.20 for medical care.

## II.

In November 1981 Wyatt sued Penrod, the owner of PENROD 54.[1] The following January, he amended his complaint to name Offshore, his employer. Wyatt alleged that PENROD 54 was unseaworthy because of the absence of ladders or other safe means for descending from the upper bunks, and that Penrod and Offshore were liable to him under the Jones Act for their negligence. Wyatt demanded maintenance and cure payments in the amount of $15 per day.

Offshore paid Wyatt $8 per day for maintenance and cure from the day of the accident. In May 1982, Wyatt sought an injunction from the district court directing Offshore to pay his medical bills and to pay $15 per day for maintenance. This motion was denied, but in June the defendants agreed to pay Wyatt's bills and to pay him maintenance and cure of $15 per day. Offshore failed to honor its obligation under the agreement to pay Wyatt a lump sum equal to $7 per day from the day of the accident until the date of the agreement. When Wyatt filed a motion to sever the maintenance and cure issue for an immediate trial, Offshore agreed to pay the overdue amount. The district court then denied Wyatt's motion and declared the maintenance and cure issue moot. The district court later ordered that evidence of failure to pay maintenance and cure would not be admitted at trial unless it related to Offshore's failure to abide by the terms of the settlement agreement. The court ruled that neither evidence relating to the rate of payments nor evidence of any failure to make payments before the date of the settlement would be admitted.

At trial, Wyatt proceeded under the theory that both Offshore and Penrod were his employers within the meaning of the Jones

Act, the latter under the "borrowed servant" doctrine. He also contended that the PENROD 54 was unseaworthy. After hearing the evidence, the jury made the following findings in answer to special interrogatories: both Offshore and Penrod were Wyatt's Jones Act employers, but only Penrod was negligent; PENROD 54 was unseaworthy; Wyatt's own negligence contributed to his injury to the extent of twenty percent; and Offshore arbitrarily or callously failed to pay Wyatt maintenance and cure. The jury awarded Wyatt damages of nearly $700,000 including $12,800 in compensation for Offshore's failure to pay maintenance and cure. The district court modified the award to take into account the contributory negligence of Wyatt, and entered judgment against Penrod and Offshore for $556,332.78 and $12,800, respectively. The district judge denied all post-trial motions attacking the judgment, including Wyatt's motion for an award of prejudgment interest. Both Wyatt and the defendants have appealed.

## III.

We publish this opinion primarily to address the issue raised by Wyatt's cross-appeal, that is, whether Wyatt is entitled to prejudgment interest. We first address briefly whether the district court erred in admitting evidence on the maintenance and cure issue and whether the district court erred in refusing to instruct the jury that Wyatt, as a supervisor for Offshore, should be held to a higher standard of responsibility for his own safety than an average seaman.

## IV.

### A.

■ At trial Wyatt testified that, despite his disability, he sought work. He said it was necessary for him to seek employment: "Because I'm broke; I owe everyone, and I'm going to have to do something. I have

1. Wyatt's original complaint also listed Tenneco Off-Shore Company as a party defendant, but Wyatt dismissed Tenneco prior to trial.

no income coming in whatsoever except food stamps and what I borrowed." Wyatt also testified that since June 1982, he had been forced to sell many personal possessions in order to survive. He stated that he was unable to pay his pharmacy bills and that the gas company had cut off his service for two months.

The defendants argued to the trial court that this testimony put maintenance and cure prior to June 1982 in issue because the jury might infer from Wyatt's statements that Offshore had made no maintenance and cure payments. The trial judge agreed to allow the defense attorneys to elicit testimony from an Offshore employee that payments had been made to Wyatt since the date of the accident. Before he did so, however, the district judge told the attorneys that if the defendants explored the maintenance question, then the plaintiff could be recalled to testify as to what payments he actually received and whether Offshore made those payments voluntarily. The judge said, "If we are going to open [the issue] up, we are going to open it up all the way." On cross-examination of this employee, Wyatt's attorney questioned the voluntariness of the payments, but the witness did not have personal knowledge of the previous settlement of the maintenance issue. The district judge decided that the jury probably had been confused by the way the issue had been presented, and he explained to the jury the facts of the case relating to maintenance and cure and the settlement agreement.

The defendants now argue that they were unfairly surprised by the admission, in violation of the pre-trial order, of evidence relating to the amount of maintenance and cure payments. They do not suggest, nor does the record, that the district judge's explanation of the facts was inaccurate. They contend, however, that the jury could have formed the impression that the amount of the maintenance payments was too low, and that this impression could only have been strengthened by the court's revelation that the amount had been increased from $8 to $15 per day. They further argue that the admission of

this prejudicial evidence denied them their right to a fair trial of the maintenance and cure issue.

We reject the defendants' contention that the district court treated the maintenance and cure issue improperly. The defendants sought to introduce testimony in violation of the pre-trial order when they could have simply asked the trial judge to give a curative instruction relating to Wyatt's testimony. If the defendants had so chosen, they could have kept the issue of the rate of maintenance and cure from being presented. Certainly the defendants have no grounds for complaint in the district judge's ruling that, if the evidence on the issue was to be presented by the defendants, Wyatt should have an opportunity to respond to that evidence. Nor did the district judge err in properly relating to the jury the facts of the settlement agreement when the defendants' attorneys had been unable to elicit testimony about the settlement from their witness.

B.

■ The defendants next argue that the district court erred in failing to instruct the jury that Wyatt's duty to look out for his own safety should be measured in the light of his own work experience. The defendants place particular emphasis on the fact that Wyatt was Offshore's steward, its highest ranking employee aboard PEN-ROD 54, and they argue that they were entitled to have the district court give their requested instruction number 26, which provides in part:

A supervisor has a high duty to carefully and properly select working procedures and to avoid operations which could prove dangerous and cause accidents. Under the law, as a supervisor, plaintiff was under an obligation to prevent accidents not only to himself but to others. Thus, where an experienced supervisor is himself in full charge and selects an unsafe manner to perform the operation and is injured, he has breached the high duty of care owed by him not

only to his subordinates but to his employer.

A party is entitled to reversal for a district court's failure to give a particularly requested instruction only if the jury was misled by the instructions that were actually given. The court is under no obligation to couch the charge in terms requested by counsel. *Coughlin v. Capitol Cement Co.*, 571 F.2d 290, 300 (5th Cir.1978).

■ In this case the jury was instructed properly that a seaman has no duty to devise a safer method for doing his work than is provided by his employer. In addition, the court instructed the jury that if Wyatt "chose to use an unsafe method that he knew or should have known was unsafe …," it should find Wyatt contributorily negligent. This last statement obviously refers to Wyatt's subjective knowledge, and we find it a sufficient statement of the law applicable to this case. *See Ceja v. Mike Hooks, Inc.*, 690 F.2d 1191 (5th Cir. 1982). Moreover, the defendants' proffered instruction number 26 is not warranted by the facts, since no connection was established between Wyatt's role as a supervisor of Offshore's catering operations aboard PENROD 54 and such responsibility for the safety of himself and other Offshore employees during their off-duty hours. *Cf. Spinks v. Chevron Oil Co.*, 507 F.2d 216, 223 (5th Cir.1975), *clarified*, 546 F.2d 675 (5th Cir.1977) (suggesting that an experienced seaman had a greater duty to guard against hazards than an inexperienced, nineteen-year-old seaman).

C.

■ Wyatt argues that the district court erred in denying his motion to amend the judgment to include an award of prejudgment interest. Wyatt invoked both admiralty and diversity jurisdiction in his complaint, and he now asserts that he is entitled to prejudgment interest, as provided by Louisiana law, even though he presented no state-law claim in his complaint or at trial. We must decide whether the district court erred in holding that principles of federal law govern Wyatt's entitlement to prejudgment interest.

In *Havis v. Petroleum Helicopters, Inc.*, 664 F.2d 54 (5th Cir.1981), this court adopted the rule set forth in *Robinson v. Pocahontas, Inc.*, 477 F.2d 1048 (1st Cir. 1973) that *federal*, not state, law governs an admiralty plaintiff's entitlement to prejudgment interest even though the plaintiff may have invoked diversity jurisdiction in his complaint. 477 F.2d at 1052. The district court, therefore, did not err in refusing to consider the effect of Louisiana law on Wyatt's claim for prejudgment interest.[2]

■ Having decided to apply federal law to Wyatt's motion for prejudgment interest, the district court was confronted with the difficult task of determining what is the rule of this circuit. We have disapproved the award of prejudgment interest in a Jones Act case tried to a jury. *Barrios v. Louisiana Construction Materials Co.*, 465 F.2d 1157 (5th Cir.1972); *Sanford Bros. Boats, Inc. v. Vidrine*, 412 F.2d 958, 972–73 (5th Cir.1969).[3] On the other hand,

**2.** In an unpublished opinion, this court affirmed the entry of judgment in the *Havis* case on remand for prejudgment interest at the Louisiana legal rate. The defendants had appealed the amended judgment, arguing that the first *Havis* opinion precluded an award of prejudgment interest because the plaintiff had not sought to present the issue to the jury. It does not appear to us that the plaintiff objected to the trial judge's use of the Louisiana legal rate. We decline to consider the unpublished opinion precedent for the proposition that state law governs the disposition of this issue, since such a holding would fly directly in the face of the *Havis* court's reliance on *Robinson*. Of course, since the issue is not before us, we express no opinion as to whether Louisiana law does provide Wyatt a right to prejudgment interest.

**3.** A primary reason for this rule, especially in personal injury cases, is that a large component of the damage award generally is attributable to future lost wages and future medical expenses. Prejudgment interest is not necessary to compensate the plaintiff for losses which have not accrued at the time judgment is entered. *See Barrios*, 465 F.2d at 1168.

In this case, a minimum of $365,000 of the gross award of approximately $700,000 was attributable to damages not yet accrued. The jury award of $300,000 for pain and suffering was

prejudgment interest is awarded almost as a matter of course in cases tried to a judge under general maritime principles, and when a Jones Act claim is tried jointly with the maritime claim before a judge, interest may be awarded at the judge's discretion. *See Ceja v. Mike Hooks, Inc.*, 690 F.2d at 1196. In cases tried before a jury, however, this court has not previously addressed whether the prejudgment interest issue may be submitted to the jury when a plaintiff has raised both maritime and Jones Act claims arising out of the same facts. Lacking guidance from this court, the trial judge relied on Judge Rubin's opinion in *Barton v. Zapata Offshore Co.*, 397 F.Supp. 778 (E.D.La.1975). In *Barton*, as in this case, the plaintiff moved for an amended judgment reflecting an award of prejudgment interest. The elements of the maritime and Jones Act negligence claims were identical, and the jury's answers to special interrogatories did not reveal any basis for holding that some of the damages were in compensation for the admiralty claim alone. Judge Rubin held that, since he was prohibited by *Barrios* and *Sanford Bros.* from awarding prejudgment interest on the damages awarded by a jury under the Jones Act, and since he could not determine which, if any, of the damages related to the maritime claim only, he could not award prejudgment interest at all: "If the court may not award prejudgment interest on the Jones Act claim, there is no separate 'pure' admiralty item on which to allow interest." 397 F.Supp. at 780. Judge Rubin commented that "the plaintiff may not claim the benefits of a jury trial on an unseaworthiness claim completely merged with a Jones Act claim as to quantum and then attempt to unscramble the verdict after he prevails." *Id.*

We adopt Judge Rubin's resolution of the problems created by our somewhat conflicting precedents.[4] As in *Barton*, the special interrogatories propounded in this case do not provide any basis for determining

which portion of the damage award, if any, is attributable to unseaworthiness rather than Jones Act negligence. Under these circumstances, the district court did not err in declining to award prejudgment interest.

V.

We conclude that the district court did not err in allowing the introduction of evidence regarding Offshore's payment of maintenance and cure to Wyatt, nor did it err in instructing the jury on the issue of negligence. We also conclude that Wyatt is not entitled to a remand for the application of Louisiana law to his request for prejudgment interest. Therefore, the judgment of the district court is

AFFIRMED.

---

not divided into past, present and future damages.

4. Nothing in this opinion, of course, abrogates the well considered rule that prejudgment interest may not be awarded with respect to future damages.