**Bradford McPHILLAMY,**
**Plaintiff-Appellant,**

v.

**BROWN & ROOT, INC., et al.,**
**Defendants-Appellees.**

No. 86–3480
**Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

Feb. 23, 1987.

Terrence K. Knister, William J. Hamlin, Walker, Bordelon, Hamlin & Theriot, New Orleans, La., for plaintiff-appellant.

Charles W. Schmidt, III, Christovich & Kearney, New Orleans, La., for defendants-appellees.

Before CLARK, Chief Judge, GARWOOD and HILL, Circuit Judges.

GARWOOD, Circuit Judge:

Appellant Bradford McPhillamy brought unseaworthiness and Jones Act claims against appellee Brown & Root, Inc., his employer, after a frayed and overloaded cable on his barge snapped and struck him in the face. The district court denied McPhillamy's motion for directed verdict and sent the case to the jury. The jury found the employer negligent and the vessel unseaworthy, and awarded McPhillamy $75,000 actual damages and $25,000 punitive damages. McPhillamy appeals, claim-

ing only that the district court erred by not awarding him prejudgment interest.

## Facts and Proceedings Below

Bradford McPhillamy worked as a "stabber" on Brown & Root's Lay Barge M–289 in the Gulf of Mexico. At the time of the accident, Brown & Root was laying a 24-inch natural gas pipeline in the Gulf. As "stabber," McPhillamy was responsible for hooking a cable, called an "endowire," to each new segment of pipe about to be welded to the pipeline. The endowire, which is attached to the barge, pulls and snugs the new pipe segment to the pipeline so it can be welded at the joint. During this operation, the endowire is almost always under tension.

On March 2, 1984, the endowire broke and snapped back into McPhillamy's face. He suffered facial lacerations that eventually necessitated plastic surgery. The accident loosened some of his teeth and also caused or exacerbated various behavioral problems. Brown & Root stipulated at trial that Lay Barge M–289 was a vessel within the meaning of the Jones Act, that McPhillamy was a seaman, and that the cable in question struck McPhillamy.

The evidence showed that the one-half-inch cable was too small for pulling the 24-inch pipe, and that the cable was worn and rusty. The cable had broken three times earlier on the night of the accident and it had also frayed once to the point of separation. After the final break before McPhillamy's injury, his foreman warned him to be cautious because the cable was "rotten." A replacement cable was ready and the changeout would have taken less than thirty minutes. McPhillamy's foreman, aware of the dangerous cable, did not direct his men to replace it even when the pipe laying operation ceased for about an hour while a flawed weld was repaired.

Brown & Root presented no evidence to exonerate itself from liability. At the close of the evidence, McPhillamy moved for a directed verdict on the issues of unseaworthiness and Jones Act negligence. In response to this motion, defense counsel suggested three things: (1) McPhillamy should not have been standing where he could be struck by the cable if it broke (even though there was uncontradicted testimony that he could not perform his job as "stabber" and yet remain out of danger's way); (2) McPhillamy was responsible for the break because he and others had spliced the cable after it had broken earlier in the shift (though there was no evidence that the endowire broke at the splice); and (3) there was no evidence of how the cable came apart. Based on these assertions, Brown & Root insisted the case should go to the jury. The court, though "not inclined to think [the case] particularly close," expressly reserved decision on McPhillamy's motion pending the jury verdict. Neither party suggested that the jury be requested to allocate damages between the Jones Act and unseaworthiness claims.

The jury found that Brown & Root was negligent, that its barge was unseaworthy, and that McPhillamy was not contributorily negligent. The jury awarded $75,000 in compensatory damages and $25,000 in punitive damages. The district court entered judgment in this amount along with post-judgment interest.

In his motion for judgment notwithstanding the verdict, McPhillamy raises the same issues now before us: namely, that he is entitled to prejudgment interest and that, if not, the district court wrongfully foreclosed the possibility of that interest by refusing to grant a directed verdict in his favor on unseaworthiness liability.

## Discussion

### A. Prejudgment Interest

As the judgment now stands, McPhillamy is not entitled to prejudgment interest because the jury awarded damages on the Jones Act and unseaworthiness claims without allocating its award between the claims. The plaintiff is not entitled to any prejudgment interest in cases such as this unless the jury apportions the damages between the Jones Act claim and

the unseaworthiness claim. *Domangue v. Penrod Drilling Co.,* 748 F.2d 999 (5th Cir.1984); *Wyatt v. Penrod Drilling Co.,* 735 F.2d 951 (5th Cir.1984); *Barton v. Zapata Offshore Co.,* 397 F.Supp. 778 (E.D. La.1975); *Petersen v. Chesapeake & Ohio Ry.,* 784 F.2d 732 (6th Cir.1986). If damages are apportioned, the plaintiff could receive prejudgment interest on the unseaworthiness award, but not the Jones Act award. *E.g., Wyatt,* 735 F.2d at 956.[1] We pointed out in *Domangue* that "[u]sually a plaintiff who seeks recovery under the Jones Act and general maritime law for injuries sustained in a single accident has no basis for apportioning his damages between each theory of recovery." 748 F.2d at 1001 n. 1. Only if there is an evidentiary footing for separating the damages caused by unseaworthiness and Jones Act negligence can the jury be asked to do so. *See id.* In this case, there was a single harm from a single cause—the flawed cable. There would have been no realistic basis for apportioning damages; McPhillamy did not ask for apportionment, and even if he had asked for an apportionment, he would not have been entitled to it.

**1.** The award of prejudgment interest under maritime law is "well-nigh automatic." *Reeled Tubing, Inc. v. M/V CHAD G,* 794 F.2d 1026, 1028 (5th Cir.1986). By contrast, prejudgment interest is not recoverable in Jones Act cases tried to a jury. *E.g., Sanford Bros. Boats, Inc. v. Vidrine,* 412 F.2d 958, 972 (5th Cir.1969); *Barrios v. Louisiana Construction Materials Co.,* 465 F.2d 1157, 1167–68 (5th Cir.1972); *Theriot v. J. Ray McDermott & Co.,* 742 F.2d 877, 883 (5th Cir. 1984).

If the Jones Act claim is tried to the court, "the allowance of prejudgment interest is within the discretion of the trial court." *Williams v. Reading & Bates Drilling Co.,* 750 F.2d 487, 491 (5th Cir.1985). This is also the rule if a Jones Act claim is joined with an unseaworthiness claim and both are tried to the court. *Ceja v. Mike Hooks, Inc.,* 690 F.2d 1191, 1196 (5th Cir. 1982).

**2.** Thus we need not discuss whether McPhillamy would have been entitled to prejudgment interest on the punitive damages, though it is at the least highly doubtful that he would have been so entitled. *See Illinois Central R.R. v. Texas Eastern Transmission Corp.,* 551 F.2d 943, 944 (5th Cir.1977) (noting that penalties do not draw prejudgment interest); *West v. Harris,* 573

## B. Directed Verdict

Perhaps recognizing that we are bound by *Domangue* and *Wyatt,* McPhillamy argues that the trial court erred in not entering a directed verdict on the unseaworthiness claim. If the district court had granted his motion, McPhillamy claims he would have abandoned his Jones Act claim. Then he would have asked the jury to return a finding of damages on the unseaworthiness count, and he would have been eligible to receive prejudgment interest on this award. *See* note 1, *supra.*

■ McPhillamy's argument fails, however, because the district court did not err in refusing to grant a directed verdict.[2] The standard for whether a directed verdict may be entered on an unseaworthiness claim is enunciated in *Boeing Co. v. Shipman,* 411 F.2d 365, 374 (5th Cir.1969) (en banc): "If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motion[ ] is proper." *See also Allen v. Seacoast Products,*

F.2d 873, 883 (5th Cir.1978) (noting that prejudgment interest is not recoverable "when it is not a necessary element of compensation"), *cert. denied,* 440 U.S. 946, 99 S.Ct. 1424, 59 L.Ed.2d 635 (1979). We also need not resolve whether McPhillamy would have been entitled to a jury determination on damages had he dismissed his Jones Act claim. Unseaworthiness claims sound in admiralty and are therefore not tried to a jury unless plaintiff invokes diversity jurisdiction (McPhillamy did not) or unless they are brought pendent to a federal law claim such as the Jones Act under which plaintiff may request a jury trial (McPhillamy did so request). *See, e.g., Cruz v. Hendy International Co.,* 638 F.2d 719, 723 (5th Cir.1981) (citing cases); *Romero v. Bethlehem Steel Corp.,* 515 F.2d 1249, 1252 (5th Cir.1975); *see generally* Note, *The Jury on the Quarterdeck: The Effect of Pleading Admiralty Jurisdiction When a Proceeding Turns Hybrid,* 63 Tex.L.Rev. 533, 536–38, 545–47 (1984) (discussing the instances in which a jury can hear a maritime claim). In this action, the lone basis for the jury trial was the Jones Act claim; it is curious that McPhillamy assumes he would have been entitled to a jury determination on damages after dismissing the vehicle for securing the jury trial in the first place. He cites no authority for this proposition.

*Inc.*, 623 F.2d 355, 359 (5th Cir.1980) (applying *Boeing* to an unseaworthiness claim and affirming directed verdict for plaintiff). We assume, *arguendo*, that on the facts of this case, the district court would not have erred by directing a verdict for McPhillamy on unseaworthiness. However, Fed.R. Civ.P. 50(b) also provides that when the court denies, or "for any reason" does not grant, a motion for directed verdict, "the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion." Thus the rule explicitly contemplates the possibility of reserving decision on the motion until the jury has rendered its verdict.

■ In reserving judgment here, the district court was following a practice we have described as "highly desirable," *Green v. Reynolds Metals Co.*, 328 F.2d 372, 373 n. 2 (5th Cir.1964), and "salutary," *Western Hills Bowling Center v. Hartford Fire Insurance Co.*, 412 F.2d 563, 565 n. 2 (5th Cir.1969). *See also* C. Wright & A. Miller, 9 *Federal Practice & Procedure (Civil)* § 2533 at 586 (1971) (stating that "[e]ven at the close of all the evidence it may be desirable to refrain from directing a verdict *though it would be possible to do so* ") (emphasis added). The primary reason we encourage district courts to reserve judgment on motions for directed verdict is that if the court grants a judgment n.o.v., a retrial is avoided if we reverse the j.n.o.v. because there is a jury verdict that can be reinstated. *Green*, 328 F.2d at 373 n. 2; *Western Hills*, 412 F.2d at 565 n. 2; C. Wright & A. Miller, *supra*, § 2533, at 586; J. Moore & J. Lucas, 5A *Moore's Federal Practice* ¶ 50.05[3] (1986). At least nine other Circuits have endorsed this practice. *Id.* at n. 1 (citing cases). The district court's failure to grant McPhillamy's motion was consistent with this generally salutary practice. Thus, even had its failure been motivated by unnecessary or excessive caution, we will not hold that the court erred.

* See 812 F.2d 937.

Accordingly, we affirm the district court's refusal to add prejudgment interest to the jury's award.

AFFIRMED.