**MARITIME OVERSEAS
CORPORATION,
Appellant,**

**v.**

**Felipe NARVAEZ, Appellee.**

**No. 01–86–0535–CV.**

Court of Appeals of Texas,
Houston (1st Dist.).

April 16, 1987.
Rehearing Denied April 30, 1987.

Thomas B. Greene, III, Crain, Caton, James & Womble, Houston, for appellant.

Newton B. Schwartz, Newton B. Schwartz, P.C., Houston, for appellee.

Before EVANS, C.J., and SAM BASS and LEVY, JJ.

## OPINION

EVANS, Chief Justice.

The appellee sued the appellant, his employer, for injuries sustained while he was working as a seaman aboard the S/T OVERSEAS JOYCE, a sea-going tanker operated by the appellant as an agent for the owner. The appellee sought recovery for appellant's alleged negligence under the Jones Act, 46 U.S.C. sec. 688 (1982), and for the alleged unseaworthiness of the vessel under general maritime law. He also sought maintenance and cure benefits, as well as attorney's fees and punitive damages for appellant's alleged failure to pay maintenance and cure. The jury found that appellant was negligent and awarded appellee $108,825 in damages under the Jones Act. The jury also awarded appellee $3,150 for maintenance and cure and $315 as attorney's fees for collection of maintenance and cure. But the jury failed to find that the vessel was unseaworthy, so the court made no award under general maritime law. Neither did the jury find that the appellant's failure to pay maintenance and cure was willful, arbitrary, or capricious, and the court therefore made no award of punitive damages. But the court did make an award of prejudgment interest.

The appellant asserts 14 points of error, complaining of the trial court's award of prejudgment interest; challenging the sufficiency of the evidence to support the award of damages in contending the award is excessive; and urging that the court erred in excluding certain evidence.

The appellant's first point of error contends that the trial court erred in awarding prejudgment interest on the amount of damages awarded to the appellee under the Jones Act. The trial court's order shows that its award of prejudgment interest was based upon a 1985 holding of the Texas Supreme Court in *Cavnar v. Quality Control Parking, Inc.*, 696 S.W.2d 549 (Tex. 1985).

The Jones Act accords a seaman essentially the same rights against an employer as the Federal Employers Liability Act (F.E.L.A.) affords a railroad employee. 45 U.S.C. §§ 51–60 (1982); H. Baer, *Admiralty Law of the Supreme Court* § 1–9 (3rd ed. 1979). Under federal law, prejudgment

interest is not permitted in F.E.L.A. cases. *Faulkenberry v. Louisiana & Arkansas Railway Co.*, 551 F.2d 650 (5th Cir.1977); *Louisiana & Arkansas Railway Co. v. Pratt*, 142 F.2d 847 (5th Cir.1944). The Fifth Circuit Court of Appeals has consistently followed this rule, even after the *Cavnar* decision. *See Lindsey v. Louisville & Nashville Railroad Co.*, 775 F.2d 1322, 1341 (5th Cir.1985).

In a suit arising under the F.E.L.A., it is federal law, not state law, that determines the availability of prejudgment interest. *Louisiana & Arkansas Railway Co. v. Pratt*, 142 F.2d at 849; *see also Norfolk & Western Railway Co. v. Liepelt*, 444 U.S. 490, 100 S.Ct. 755, 62 L.Ed.2d 689 (1980). Similarly, in a maritime case brought under the Jones Act, the plaintiff's entitlement to prejudgment interest is determined by federal, not state, law. *Wyatt v. Penrod Drilling Co.*, 735 F.2d 951, 955 (5th Cir.1984); *Webster v. M/V MOOLCHAND*, 730 F.2d 1035 (5th Cir.1984).

Admiralty law, at one time, strictly prohibited the award of prejudgment interest in any maritime personal injury suit tried before a jury, but allowed prejudgment interest in a non-jury trial on the admiralty docket. *Sanford Bros. Boats, Inc. v. Vidrine*, 412 F.2d 958, 972 (5th Cir.1969). Recent decisions of the Fifth Circuit Court of Appeals have eliminated the strict prohibition of prejudgment interest in a jury trial on claims based on general maritime law. But the court still disallows prejudgment interest on Jones Act claims. *Wyatt v. Penrod Drilling Co.*, 735 F.2d at 955. When a recovery is based on both a Jones Act claim and an unseaworthiness claim, the plaintiff is not entitled to any prejudgment interest "unless the jury apportions the damages between the Jones Act claim and the unseaworthiness claim." *McPhillamy v. Brown & Root, Inc.*, 810 F.2d 529 (5th Cir.1987).

In the case at bar, the issue of unseaworthiness was submitted to the jury, and the jury failed to find that the vessel was unseaworthy. Therefore, no award of damages was made under the general maritime law, and the appellee's recovery of damages was based solely upon the provisions of the Jones Act. Under such circumstances, there was no basis under federal law for an award of prejudgment interest. *Wyatt v. Penrod Drilling Co.*, 735 F.2d at 955; *Havis v. Petroleum Helicopters, Inc.*, 664 F.2d 54 (5th Cir.1981).

We sustain the appellant's first point of error.

We next consider the appellant's 12 points of error relating to the award of damages. In points of error two, three, and four, the appellant contends that there is no evidence or insufficient evidence to support the jury's award for loss of past earnings, and that the award is excessive; in points six, seven, and eight, the appellant makes similar complaint with respect to the award for loss of future earning capacity; in points nine, ten, and eleven, the appellant makes a similar complaint with respect to the award for past physical pain and mental anguish; and in points twelve, thirteen, and fourteen, the appellant makes the same challenge with respect to the award for future physical pain and mental anguish.

In determining the sufficiency of the evidence in a suit brought under the Jones Act, the appropriate standard of review is whether there is a "reasonable evidentiary basis" for the jury's verdict. *Theriot v. J. Ray McDermott & Co. Inc.*, 742 F.2d 877 (5th Cir.1984); *Thezan v. Maritime Overseas Corp.*, 708 F.2d 175 (5th Cir.1983), *cert. denied*, 464 U.S. 1050, 104 S.Ct. 729, 79 L.Ed.2d 189 (1984). If a reviewing court finds that there is a reasonable evidentiary basis for the jury's verdict, it must uphold the verdict, *Thezan v. Maritime Overseas Corp.*, 708 F.2d at 181, and it may not concern itself with the amount of the damages awarded, except in extreme cases where the award is "so gross ... as to be contrary to right reason." *Id.* at 182. It has been held that an award under the Jones Act must be sustained unless there is "no law and no evidence" to support it, rendering the award so excessive as to be "obviously punitive, motivated by prejudice, passion, partiality,

or corruption." *Rains v. Diamond M. Co.*, 396 So.2d 306 (La.App.1981), *writ ref'd*, 399 So.2d 623, *cert. denied*, 455 U.S. 938, 102 S.Ct. 1427, 71 L.Ed.2d 648 (1982).

The appellee, a 63–year–old seaman, first went to sea in 1939, and he had sailed continuously for 47 years. In January 1983, while his vessel was on stormy seas, he tripped and fell, injuring his knee. The next day the vessel proceeded to San Pedro, California, and the appellee was examined by a doctor, who diagnosed his injury as "non-displaced fracture of the patella on the right knee." The appellee was placed in a cast and returned to Houston.

There was medical testimony that the appellee could be partially disabled because of his injury and that his work as a seaman would be limited to light duty. According to this testimony, the appellee would not have been able to bend and stoop in his work, nor would he be able to climb 40–foot vertical ladders as he had done in the past.

The appellee testified that he had planned to continue sailing for "a few more years," but that he could not get around or do the things he did before he was injured. He had sailed only one time after his accident, and on that occasion, he could not perform the same work he had done as a seaman. He said that his "bos'n" had been easy on him and had covered for him, and that he could not climb up and down the tanks to clean them. He said the crew complained about his not working actively, about not doing his share of the work.

■ There was evidence that from January 11, 1983, to January 27, 1983, the appellee earned $2522, or approximately $150 per day. At that rate, the appellee's earnings from the time of his injury, until trial in February 1986, would have amounted to approximately $76,000. The appellee's gross wages in 1984 were $30,503.32. Under the applicable standard of review, we conclude that the jury's award of $60,000 for past earnings has a reasonable evidentiary basis and is not excessive. We accordingly overrule the appellant's second, third, and fourth points of error.

■ We also overrule points of error six, seven, and eight, concluding that there is reasonable evidentiary basis for the jury's award of $1,500 for loss of future earning capacity, and hold that such award is not excessive.

Although the medical expert testified that appellee had told him that he had "retired as a seaman," the jury could have inferred from all the evidence that until he was injured, the appellee had planned to keep working for "a few more years." An economist testified that someone of appellee's age had a worklife expectancy of four years at the time he was injured. We conclude that there is a reasonable evidentiary basis for the jury's award, based upon the appellee's projected future earnings for a period of about one year.

■ There is also a reasonable evidentiary basis for the jury's award of $35,000 for past physical pain and mental anguish.

The appellee testified that after he fell, his "knees were numb, and they were hurting." He was unable to go on a scheduled watch later that evening, because his knee "was hurting; I was hurting." He asked for treatment, and for pain pills because he was in pain. The treating physician in California noticed appellee's complaints of "pain to his right knee"; "abrasions over both knees"; "moderate joint swelling"; and "tender over patella".

When the appellee saw the orthopedist in Houston, he told him he had some occasional pain in his knee. The doctor testified that upon reasonable medical probability, appellee's injury was the type that causes pain and mental anguish. The doctor also concluded that until the area was well-healed, the patella tendon could not function, and it would be painful to use the knee. The appellee testified at trial that his knee still bothered him in "foggy, damp" weather. This same testimony was sufficient to support the jury's award of future physical pain and mental anguish. Although the physician's testimony indicated that the appellee's condition would likely improve, the jury was authorized to infer from the appellee's testimony that his knee continued to hurt in certain kinds of

**928**

weather, and that because of the continuing pain, he was unable to perform the functions he had in the past. The physician further testified that the appellee could, in reasonable medical probability, have some anxiety and mental anguish about the fact that his physical condition led to his retirement and probably accelerated his retirement.

We accordingly overrule the appellant's ninth, tenth, eleventh, twelfth, thirteenth, and fourteenth points of error concluding that there is reasonable evidentiary basis for the jury's award of damages for past and future physical pain and mental anguish and that such awards are not excessive.

We return to appellant's fifth point of error in which it contends that the trial court committed reversible error in excluding certain evidence. In appellant's bill of exceptions, appellee's expert witness testified that he was generally familiar with shipping conditions and that shipping was in a depressed state. He said that a number of companies had gone out of business and that the unions were putting restrictions on the amount of sea time that a seaman could sail, and also on the amount of overtime a seaman could take. Thus, he testified that a seaman would expect to make less in 1983–1985 than he made in 1982. The appellant contends that this testimony was significant because the appellee's economist based his projection of loss of wage earning capacity on the appellee's 1982, after-tax income of $21,000. The appellant argues that the appellee's 1982 income was clearly his largest, and that his wage earning capacity, due to economic conditions, was going to be actually less than that projected by the economist.

We overrule this point of error. Although the appellant's offer of proof tended to show the general economic depression of the shipping industry, it was not shown how much such depressed conditions would actually have affected the appellee's wage earning capacity. The trial court could have decided that the proffered evidence was too speculative to be of any real assistance to the jury in deciding the issue. We

conclude that the trial court acted within its discretion in refusing to admit the proffered testimony.

The judgment of the trial court is modified and reformed to exclude the award of prejudgment interest, and as so modified and reformed, the judgment is affirmed.