John BORGES, Plaintiff, Appellee,

v.

OUR LADY OF THE SEA CORP., Defendant, Appellant.

No. 90–1686.

United States Court of Appeals, First Circuit.

Heard March 7, 1991.

Decided June 10, 1991.

Thomas E. Clinton with whom Clinton & Muzyka, Boston, Mass., were on brief, for defendant, appellant.

Joseph M. Orlando with whom David C. Nunheimer and Orlando & Associates, Gloucester, Mass., were on brief, for plaintiff, appellee.

Before CAMPBELL, Circuit Judge, BOWNES, Senior Circuit Judge, and CYR, Circuit Judge.

BOWNES, Senior Circuit Judge.

In this admiralty case defendant-appellant, Our Lady of the Sea Corp., appeals a jury verdict in favor of plaintiff-appellee John Borges. The appeal is somewhat unusual in that appellant does not attack head-on the finding of liability or assessment of damages. Four issues are presented to us: (1) whether plaintiff's counsel should have been disqualified; (2) whether a statement given by one of the witnesses should have been excluded; (3) whether the courtroom testimony of the same witness was properly stricken and further testimony by him properly excluded; and (4) whether the district court erred in its application of prejudgment interest.

## DISQUALIFICATION

At the outset we reject plaintiff's rather far-fetched argument that this issue was not properly preserved for appeal. Defendant moved to disqualify plaintiff's counsel well in advance of trial, and the motion was denied. The matter was brought up again at trial and, after discussion, the court again refused to disqualify plaintiff's counsel. Defendant duly objected to the ruling and filed a timely appeal. Defendant did not lose his right to have us consider the question because it did not bring a post-trial motion asking for a new trial on the grounds that plaintiff's counsel should have been disqualified. This claim was made pretrial and at trial. Defendant's timely appeal preserved it as an appellate issue.

An understanding of the disqualification issue requires an explanation of the genesis of the case and plaintiff's theory of liability. The defendant corporation, Our Lady of the Sea Corp., was formed in 1979. Its purpose was to own and operate a commercial fishing vessel. At all relevant times there were three equal shareholders: the plaintiff, John Borges, and two brothers, John and Antonio Pata. All three worked on board the vessel for the defendant corporation. All three were originally from Portugal and spoke only broken English. They testified at trial through an interpreter. Borges had considerable experience as a commercial fisherman. The Pata brothers asked Borges in 1979 to become master of the corporation's fishing vessel which was built and delivered in 1979. They loaned him the money to become an equal shareholder with the other corporate shareholders.

On October 9, 1986, Borges was injured while he was overseeing the securing of a spare net to a rail on the upper deck. This required the use of a block and tackle attached to a winch. The wire cable that attached the winch to the block and tackle broke; the block fell and struck Borges on the head, severely injuring him. Borges alleged and proved to the jury's satisfaction that one of Antonio Pata's duties was

the maintenance of the cable and that his failure properly to carry out this duty resulted in its breaking. There was testimony to the following effect: A fishing boat has two captains, a fishing (or sea) captain and a "shore" captain. The "shore" captain is responsible for the proper care and repair of all the equipment on the vessel. The fishing (or sea) captain's responsibility is to get the ship to productive fishing grounds so that fish can be caught. Navigation and fishing are the sea captain's main concern. There was evidence from which the jury could find, as it did, that Antonio Pata was the "shore" captain of Our Lady of the Sea, that the cable that held the block broke because it was "rotten," due to lack of proper care by Antonio Pata.

With this as a prelude, we now get to the disqualification facts, which are somewhat complex. On May 22, 1986, a complaint alleging fuel contamination was filed by the defendant corporation in the United States District Court for Massachusetts against Rose's Oil Service. The attorney who drew up the complaint, Stephen Ouelette, was associated at the time with Joseph Orlando, plaintiff's counsel. The complaint in the instant case was filed by Attorney Orlando on October 22, 1986.

Sometime after October 9, 1986, it is not clear exactly when, Borges retained Orlando to represent him. On October 20, all the members of the crew, according to Attorney Orlando, went to his office so he could discuss the facts of the accident with them. At that time Orlando obtained statements from the crew, including Antonio Pata. Pata's statement admitted that he was "shore" captain, that the cable attached to the block and tackle was rusting, and that he was responsible for its condition.

John Pata testified at trial that he and his brother had gone to Orlando's office that day to discuss the fuel contamination case with Attorney Ouelette. He said that as he and his brother were leaving, they saw the plaintiff and Orlando, that Orlando called them into the conference rooms where the other crew members were. According to John Pata, Orlando browbeat his brother Antonio into signing the statement, telling Antonio that Borges would not have a case unless he signed the statement. John Pata testified that the statement was not true. He further testified that later he and Antonio unsuccessfully tried to get Orlando to return the statement to them.

On or before February 14, 1987, Orlando became aware of the conflict of interest and arranged for substitute counsel to take over the oil contamination case.

On February 6, 1989, defendant moved to disqualify the firm of Orlando and Associates from prosecuting the actions.

The grounds stated were:

> that the conduct of the firm in prosecuting this cause of action has constituted a conflict of interest in violation of the ABA Code of Professional Responsibility Canon 5 in that the firm failed to exercise judgment solely for the benefit of its client and free of compromising influences, Canon 9, in that the firm has exhibited an appearance of impropriety and that the firm has compromised the integrity of the judicial system, and Canon 4, in that the firm failed to preserve confidences of its client and abused the confidential relationship to the detriment of the defendant.

On March 1, 1989, the district court denied the motion, stating: "Motion denied. However, should the matter be presented to the Massachusetts Board of Bar Overseers and should it rule that an ethical impropriety has occurred, the court will reconsider." The matter was presented to the Massachusetts Board of Bar Overseers, no complaint was issued and the matter was closed.

 The standard of review of a district court's disqualification of counsel decision is abuse of discretion. *In re Bushkin Assocs., Inc.*, 864 F.2d 241, 246 (1st Cir. 1989); *Fiandaca v. Cunningham*, 827 F.2d 825, 828 (1st Cir.1987); *Kevlik v. Goldstein*, 724 F.2d 844, 847 (1st Cir.1984). In a conflict of interest situation, which is what defendant asserts here, the relevant inquiry is whether the subject matter of the two representations is "substantially related"; could the attorney have obtained confidential information in the first suit that

would have been relevant to the second. *Analytica, Inc. v. NPD Research, Inc.*, 708 F.2d 1263, 1266 (7th Cir.1983). *See also Kevlik v. Goldstein*, 724 F.2d at 850–51.

■ Although we do not condone a lawyer suing his own client, we find no basis in the unique circumstances of this case for finding that the district court abused its discretion in denying the disqualification motion. Except for Orlando himself there was no link between the fuel contamination suit and the personal injury action brought by Orlando on behalf of Borges. Defendant has not pointed to any confidential information that Orlando obtained, or could have obtained, during the time his office represented it in the fuel suit. Moreover, Orlando did not need access via the fuel suit for information about the defendant corporation. His client, Borges, in addition to being the fishing captain of the vessel, was one-third owner of the defendant corporation and its treasurer. Orlando had all the corporate information he needed for Borges' personal injury case available at his client's fingertips. Moreover, in addition to the fact that there was no actual conflict of interest, the simultaneous representation had ceased by the time the disqualification issue arose.

We are disturbed by the fact that Orlando would appear to have run afoul of the requirements of professional ethics at the time he took the statement from Antonio Pata. Orlando acted in the capacity of an attorney for Borges while a member of a firm still engaged in the active representation of Borges' prospective opponent, the defendant corporation, in another matter. Further, Orlando took this statement from Antonio Pata, a principal of the defendant corporation, under circumstances where it may have been unclear to Pata on whose behalf Orlando was acting. It would seem, therefore, that Orlando acted with an actual, impermissible conflict of interest in taking the statement. *See, e.g.*, Rule 1.7 of the American Bar Association Model Rules of Professional Conduct (1984). We cannot condone such a practice.

Still, we also point out that it was not established, contrary to what defendant seems to assume, that the substance of Pata's statement was improperly and unethically influenced by Orlando. The circumstances surrounding how the statement was obtained were hotly disputed. There was testimony from which it could be found that Pata gave the statement voluntarily and with full understanding of what he was saying. There was contrary evidence by John Pata to the effect that Orlando improperly influenced the substance of Antonio Pata's statement. The jury, by its verdict for plaintiff, showed that it did not believe John Pata's testimony. We cannot overturn a jury's credibility finding.

■ Insofar as Orlando appears to have acted improperly in obtaining the statement as counsel for Borges, such impropriety in the means of obtaining a statement would not automatically bar admission of the statement at trial. There is no exclusionary rule in civil cases. If the issue were raised, the decision whether to exclude the evidence would be in the district court's discretion. *Park v. El Paso Board of Realtors*, 764 F.2d 1053, 1065–66 (5th Cir.1985); *Trans–Cold Express, Inc. v. Arrow Motor Transit, Inc.*, 440 F.2d 1216, 1219–20 (7th Cir.1971). *See* Fed.R.Evid. 403.

The final point on this issue is that the district court did not, contrary to what defendant suggests, rely on the action of the Massachusetts Board of Overseers for its decision not to disqualify Orlando. In reaffirming during trial its prior denial of defendant's motion to disqualify Orlando, the court stated to Orlando:

The fact that the matter has been referred to the Board of Bar Overseers and the fact that the Board of Bar Overseers has done nothing is hardly conclusive of the matter with respect to my duty. If this jury goes for the defendant in this case and therefore accepts the testimony put forth by the Patas here, it would be my duty to refer this matter to an officer of this Court that I appoint for an independent investigation. Because I have a responsibility presiding over this case and you're entitled to know where we stand with respect to that.

The denial of defendant's motion to disqualify Attorney Orlando is affirmed.

## THE STATEMENT OF ANTONIO PATA

■ Prior to trial, defendant moved to have the statement of Antonio Pata, which was in affidavit form, ruled inadmissible and the plaintiff forbidden from using or referring to it at trial. The grounds for the motion in limine were:

> because it was obtained while the attorney was under a conflict of interest, in violation of the attorney-client privilege, it was a confidential communication[s], it is unfairly prejudicial, it was obtained under circumstances rendering its reliability questionable, and it was obtained under such circumstances as to render its admission into evidence as gross miscarriage of justice.

The court ruled: "Motion denied without prejudice to raising objection to any such evidence should there be an adequate foundation for its admission."

During trial Attorney Orlando used the statement in cross-examination of John Pata who had testified that the statement had been obtained from his brother Antonio by false statements and misrepresentation and that its contents were not true. John Pata was also cross-examined about a subsequent statement given by Antonio Pata to the attorney for the defendant. The second statement contradicted and repudiated the first one. At the conclusion of John Pata's testimony, both statements were offered in evidence by plaintiff's attorney. Defense attorney objected. There was a conference at the bench. At the conclusion of the conference defendant's attorney stated: "I have no objections, your honor." The two statements were thereupon admitted into evidence.

In light of its attorney's "no objections" statement, defendant was foreclosed from appealing the admission at trial of the two statements. Defendant has appealed, therefore, not from the admission of the two statements at trial, but from the district court's refusal to grant its motion in limine to bar Antonio Pata's statement from admission or use at trial. We reject defendant's gambit for two reasons. First, the district court acted well within its discretion in not deciding prior to trial a motion that turned on evidence to be adduced at trial. Second, the two statements were properly admitted in evidence at trial; this confirms the wisdom of the district court in denying the motion in limine. The district court's denial of the motion in limine is affirmed.

## THE STRIKING OF THE COURTROOM TESTIMONY OF ANTONIO PATA

■ On Monday, April 23, the defense called Antonio Pata to the stand. His testimony was given through an interpreter. The court adjourned until Wednesday, April 25 before Pata's direct testimony was completed. Prior to adjourning the judge advised counsel that he expected the testimony to be completed on Wednesday morning and that arguments and the charge would start at one o'clock. Neither counsel objected.

On Wednesday no interpreter appeared at court. Defense counsel told the court that the interpreter used on Monday could not be present on Wednesday so a new one had been obtained and was supposed to be at court at nine o'clock. Defense counsel did not know why the interpreter was not present. The court advised defense counsel that if the interpreter did not appear after the remaining witness had testified, "We either have an interpreter here or I'm going to strike his [Antonio Pata's] testimony." The interpreter still had not arrived when the last remaining witness had finished testifying. Defense counsel offered to have Antonio Pata testify in English. The court inquired why an interpreter had been used on Monday. Defense counsel replied: "Well, he is not fluent in English and in order to eliminate any problems I put him on in that regard. He does speak and understand English to a certain extent." The court rejected the offer, stating: "No, his statements are in evidence. I'm striking his testimony."

The court then instructed the jury:

THE COURT: Well, there is no interpreter here to interpret for Mr. Antonio Pata. In my judgment, consistent with my orders, which I take full responsibility, this case has been scheduled, it's going to go forward. If there can be no interpreter for this witness, we're never going to get a chance to hear the completion of his direct examination and we're never going to get a chance to hear Mr. Orlando cross-examine this witness.

Accordingly, I have no choice but to strike the testimony of Mr. Antonio Pata from this case. And I do strike it. This case proceeds as though Mr. Antonio Pata never took the witness stand. So just disregard it. I'm not making a judgment, because it's not for me to make a judgment, whether it's to be believed or disbelieved. But I'm just striking the testimony as though he never testified.

After a conference with counsel about the charge and certain points of law, the court proceeded to charge the jury. During the charge defense counsel attempted to interrupt. The court refused to let him do so; counsel then asked if he could put his reason on the record later. The court replied: "You may. It's obvious to me, and I will say in fairness to you, your interruption is perfectly appropriate, but having that in mind, I'm going to go forward." One of the post-trial affidavits filed in support of defendant's motion for a new trial stated that the substitute interpreter had arrived at court while the charge was being delivered to the jury.

Defendant's motion for a new trial focused solely on the court's striking of the courtroom testimony of Antonio Pata. The affidavits filed with the motion, which we assume to be true, assert the following facts: After defense counsel learned that the interpreter used on Monday would not be available on Wednesday, he contacted the Boston Language Institute and made arrangements for an interpreter to be present at 9 a.m. on Wednesday at the courthouse. The interpreter chosen by the Institute was Dr. Jao Alvares. Dr. Alvares stated that on Wednesday, April 25, at 1 a.m. he experienced a migraine headache, took 30 milligrams of valium and did not wake up until 2 p.m. on Wednesday afternoon. When no interpreter appeared at court on Wednesday morning, defense counsel immediately contacted the Boston Language Institute which obtained another interpreter. Unfortunately, the substitute did not arrive at court until after the court was well into its jury charge.

After the hearing on the motion for a new trial, the court ruled:

Motion for a new trial is denied. The actions taken by the Court were well within the Court's supervisory power to conduct the proper, to conduct judicial proceedings properly. The actions were not taken for expedition but only the proper conduct of all the Court's business, other cases scheduled as well as this case. The defendants here had their full day in court. Indeed, the district judge must be accorded the discretion to make the decisions in the manner in which I made them at the time on the basis of which I made them, and counsel are required to take sufficient steps to maintain the flow of evidence properly in a case.

The record should be clear that this is not an evidentiary ruling under 403 or any of the other federal rules of evidence, but rather a ruling relative to the supervision and progression of the proceedings when it appeared that the witness could not competently testify due to the absence of the interpreter.

The question is whether the district court abused its discretion in striking the testimony. A trial judge has wide latitude to regulate the conduct of trial. "In general, all matters which relate to the orderly conduct of a trial, or are necessary to the proper administration of justice in a court, and which are not regulated by precise statute or rule ... are within the discretion of the court." 88 C.J.S. *Trial* § 36 at 91 (1955).

District courts may impose reasonable time limits on the presentation of evidence. *Johnson v. Ashby*, 808 F.2d 676, 678 (8th Cir.1987). We agree with the Seventh Circuit that, "in this era of crowded

district court dockets federal district judges not only may but must exercise strict control over the length of trials, and are therefore entirely within their rights in setting reasonable deadlines in advance and holding the parties to them...." *Flaminio v. Honda Motor Co.,* 733 F.2d 463, 473 (7th Cir.1984). The *Flaminio* court disapproved of strict adherence to rigid time limits set in advance of trial, but that is not the situation before us. Here we are faced with the failure of defendant to produce an interpreter on time. This had the same effect as if the witness himself failed to appear.

Under the facts of this case, we find that the district court did not abuse its discretion in striking the courtroom testimony of Antonio Pata. At the time the court decided to strike the testimony, the interpreter was not present. Defense counsel could not explain his absence. Nor could defense counsel assure the court that a substitute would be at court before the evidence was closed. The district court was properly concerned that plaintiff would be deprived of his right to cross-examine the witness.

Our review of the record convinces us that the testimony was not vital to a proper determination of the facts. The jury had in evidence two conflicting statements by Antonia Pata. John Pata, who witnessed the accident, testified as to how it happened. He also testified that the statement his brother Antonia gave to Attorney Orlando was not correct. Striking the courtroom testimony of Antonio Pata did not appreciably curtail the jury's ability to determine how and why the accident happened, if it curtailed it at all.

Nor can we fault the district judge for refusing to interrupt his charge so as to continue with the interpreted testimony of Antonia Pata. Defendant had the duty to see to it that an interpreter was present before the evidence closed. This it failed to do.

Trials, especially civil ones, cannot be prolonged because of the failure of witnesses to appear as scheduled which, in effect, is the situation here. As the district court pointed out, delays affect not only the parties in the case at hand but those waiting in the wings. Moreover, in civil cases there is a time-honored way of avoiding the risk that a witness may not be able to appear when necessary: take his deposition prior to trial. The deposition of any important witness should be taken so his testimony will be available if he is not able, for whatever reason, to attend the trial. This was not done here.

We affirm the denial of the motion for a new trial.

## PREJUDGMENT INTEREST

The jury awarded the plaintiff $341,493.45 on both counts, Jones Act negligence and unseaworthiness. The court had instructed the jury that it could award damages for past and future medical expenses, past and future loss of earning capacity, and past and future pain and suffering. The jury was not asked to specifiy the components of its damages award.

■ In answer to a special interrogatory the jury found that the plaintiff was entitled to prejudgment interest at the rate of 8%.[1] The court multiplied the entire damages verdict ($341,493.45) by 8%, for an award of $96,516.36 in prejudgment inter-

---

1. In actions at law under the Jones Act, recovery of prejudgment interest has been held to be impermissible. *Theriot v. J. Ray McDermott & Co.,* 742 F.2d 877, 883 (5th Cir.1984). Prejudgment interest is generally available under admiralty law. *See City of Boston v. S.S. Texaco Texas,* 773 F.2d 1396, 1401 (1st Cir.1985).

The Fifth Circuit has ruled that where a jury awards damages on Jones Act and unseaworthiness claims without allocating the award between the claims, the plaintiff is not entitled to prejudgment interest. *Colburn v. Bunge Towing, Inc.,* 883 F.2d 372, 378 (5th Cir.1989); *McPhillamy v. Brown & Root, Inc.,* 810 F.2d 529, 532 (5th Cir.1987); *Williams v. Reading & Bates Drilling Co.,* 750 F.2d 487, 491 (5th Cir.1985); *Wyatt v. Penrod Drilling Co.,* 735 F.2d 951, 956 (5th Cir.1984).

Defendant here appeals not the imposition of prejudgment interest itself but the district court's application of such interest to the entire damages award. We therefore do not decide whether prejudgment interest was improperly awarded on a combined Jones Act-admiralty award.

est. This was added to the verdict for a total damages award of $438,009.81, which was the amount of the judgment.

Defendant claims that prejudgment interest should have been awarded only on damages for past lost wages. Plaintiff does not respond on the merits but argues that the issue was not properly preserved for appeal because defendant did not object to the jury instructions on prejudgment interest. The record belies this. After the charge, counsel for defendant questioned the wording of the interrogatory on prejudgment interest. He then stated: "I'm going to put on the record anyway, that prejudgment interest is only on past lost wages and it's a percentage and the mathematics should be applied by the court." The jury found the percentage (8%), and the mathematics was applied by the court. There can be little doubt that the court knew that defendant took the position that prejudgment interest applied only to past lost wages. We find the issue was properly preserved for appellate review.

We now turn to the substantive issue of the scope of the application of prejudgment interest. Prejudgment interest on admiralty claims is generally allowed on claims for prejudgment economic harm "as compensation for the use of funds to which the plaintiff was ultimately judged entitled, but which the defendant had the use of prior to judgment." *Miller Industries v. Caterpillar Tractor Co.*, 733 F.2d 813, 823 (11th Cir.1984) (upholding prejudgment interest on award for economic loss). *See also City of Boston v. S.S. Texaco Texas*, 773 F.2d 1396, 1401 (1st Cir.1985) (affirming award of prejudgment interest from date of tanker collision).

■ It has been held that prejudgment interest may be awarded on damages for past intangible loss, such as pain and suffering. At common law, prejudgment interest traditionally was not allowed on unliquidated tort claims. *Moore–McCormack Lines, Inc. v. Amirault*, 202 F.2d 893, 897–98 (1st Cir.1953) (discussing the rule but reserving judgment on it). In *Rivera v. Rederi A/B Nordstjernan*, 456 F.2d 970, 976 (1st Cir.), *cert. denied*, 409 U.S. 876, 93

S.Ct. 124, 34 L.Ed.2d 128 (1972), we noted that "a plaintiff's immediate loss and the usual delay in payment may warrant the granting of prejudgment interest" on unliquidated tort claims, including claims for pain and suffering. Declining to follow *Moore–McCormack Lines, Inc. v. Amirault*, we followed *City of New York v. Bernstein*, 332 F.2d 1006, 1008 (2d Cir.), *cert. denied*, 379 U.S. 922, 85 S.Ct. 277, 13 L.Ed.2d 335 (1964), which upheld prejudgment interest on an award of personal injury damages specifically including pain and suffering. *Rivera v. Rederi A/B Nordstjernan*, 456 F.2d at 976. Other circuits have also ruled that prejudgment interest on past pain and suffering is allowable. *See Deakle v. John E. Graham & Sons*, 756 F.2d 821, 833 (11th Cir.1985) (award of prejudgment interest on portion of verdict which represented recovery for pain and suffering, mental anguish, and maintenance and cure not an abuse of discretion); *Hillier v. Southern Towing Co.*, 740 F.2d 583, 586 (7th Cir.1984) (in admiralty cases, prejudgment interest may be awarded for past pain and suffering and for past loss of society), *cert. denied*, 469 U.S. 1190, 105 S.Ct. 961, 83 L.Ed.2d 966 (1985).

Appellant relies on *Moore–McCormack Lines, Inc. v. Richardson*, 295 F.2d 583 (2d Cir.1961), *cert. denied*, 368 U.S. 989, 82 S.Ct. 606, 7 L.Ed.2d 526 370 U.S. 937, 82 S.Ct. 1577, 8 L.Ed.2d 806 (1962), for the claim that prejudgment interest may not be added to awards for pain and suffering. In that case, however, no claim was made for interest on pain and suffering. *Id.* at 592 n. 5. Appellant also cites *Pino v. Protection Maritime Ins. Co*, 490 F.Supp. 277 (D.Mass.1980), which denied prejudgment interest on an award for humiliation and personal degredation. We think, however, that based on *Rivera v. Rederi A/B Nordstjernan* and the other circuit court cases cited above, an award of prejudgment interest on past pain and suffering is within the discretion of the trial court.

■ It is well established that prejudgment interest should not be awarded on damages for future loss, either liquidated or unliquidated. In *Blackburn v. Snow*,

771 F.2d 556, 573 (1st Cir.1985), plaintiff received prejudgment interest on damages for future medical costs. We remanded the prejudgment interest award because the district court had failed to explain its basis, indicating that prejudgment interest on awards for future loss was improper:

> One would normally expect any of an amount awarded that is aimed at compensating for future pain, suffering, or emotional loss to be included in the lump sum award itself without additional interest. Certainly any of the award that was designed to compensate for future medical payments should have been included in the fixed (pre-interest) sum in an amount that, if invested, would grow to equal the fees likely charged at future times.

*Id.* at 573. In his dissent, Judge Aldrich agreed with the majority insofar as "[t]here could be no occasion for adding seven years back interest at 12% ($23,000) to 'fully compensate' plaintiff for expenses not yet incurred." *Id.* at 578 (Aldrich, J., dissenting). *See also Williamson v. Handy Button Mach. Co.*, 817 F.2d 1290, 1298 (7th Cir.1987) ("[i]nterest is not available on lost future wages and pensions"); *Pickle v. International Oilfield Divers, Inc.*, 791 F.2d 1237, 1241 (5th Cir.1986) ("a victorious plaintiff has not suffered any delay in payment of [future damages], whether they have been discounted to present value or not, and hence there should be no prejudgment interest allowed on them"), *cert. denied*, 479 U.S. 1059, 107 S.Ct. 939, 93 L.Ed.2d 989 (1987); *Valley Line Co. v. Ryan*, 771 F.2d 366, 377 (8th Cir.1985) (prejudgment interest improperly awarded on damages for future medical expenses); *Deakle v. John E. Graham & Sons*, 756 F.2d at 834 (no interest allowed on award for lost future wages); *Williams v. Reading & Bates Drilling Co.*, 750 F.2d 487, 491 (5th Cir.1985) (prejudgment interest may not be awarded with respect to future damages); *Wyatt v. Penrod Drilling Co.*, 735 F.2d 951, 956 n. 4 (5th Cir. 1984) (same); *City of New York v. Bernstein*, 332 F.2d at 1008 ("To the extent that there are elements of future losses which are represented in the final damages pre-

judgment interest is, of course, not appropriate.").

In the present case, the jury made a lump sum award which included both past and future damages. We hold that prejudgment interest may properly be added to damage awards for past lost wages, medical expenses that have been incurred, and past pain and suffering; the date of the start of trial is the usual cut-off date. Prejudgment interest, however, is not to be factored into an award for damages for future loss of earnings, future medical expenses, and/or future pain and suffering. The case, therefore, must be remanded to the district court for determination of a remittitur in accord with this holding or, if plaintiff does not agree, for a new trial on damages.

Approved in part, reversed in part. Remanded for further proceedings in accord herewith. Appellant is awarded 75% of his costs on appeal.