Larry Don **ROBINSON**,
Plaintiff-Appellant,

v.

**ZAPATA CORPORATION, et al.,**
Defendants-Appellees.

No. 80–1449.

United States Court of Appeals,
Fifth Circuit.

Dec. 14, 1981.

Schechter & Shelton, Inc., Harold J. Eisenman, Houston, Tex., for plaintiff-appellant.

Crain, Winters, Deaton, James & Briggs, Thomas B. Greene, III, Frank E. Caton, Houston, Tex., for defendants-appellees.

Before CLARK, Chief Judge, GOLDBERG and WILLIAMS, Circuit Judges.

GOLDBERG, Circuit Judge:

■ Plaintiff Larry Don Robinson appeals from the entry of a directed verdict in favor of defendant Zapata Off-Shore Company ("Zapata") on plaintiff's Jones Act and unseaworthiness claims. Plaintiff argues that the District Court employed an incorrect standard in evaluating the evidence for a directed verdict, and that there was sufficient evidence of defendant's negligence and of the ship's unseaworthiness to justify submission of these issues to the jury. While we find that the District Court did employ an erroneous standard in evaluating the evidence pertaining to plaintiff's Jones Act claim, we conclude that even under the correct test, a directed verdict was appropriate. Therefore, we affirm.

## FACTS

Plaintiff Larry Don Robinson was employed by defendant Zapata as a welder aboard the *Lexington 26*. His first welding assignment for Zapata was to cut a nine-inch circle out of a plate of steel. A piece of steel fell and struck Robinson, breaking his foot. Robinson brought suit in the United States District Court for the Eastern District of Texas under the provisions

of 46 U.S.C. § 688, known as the Jones Act.[1] He claimed that defendant Zapata's negligence, and the unseaworthiness of the *Lexington 26*, were responsible for his injury in that defendant Zapata: (1) failed to provide plaintiff with supervision and instruction in off-shore welding, (2) failed to provide a safe and orderly place to work, and (3) failed to provide adequate tools and equipment, specifically, clamps for attaching the steel plate to the welding table. At the conclusion of plaintiff's testimony, Judge Robert M. Parker directed a verdict in favor of defendant Zapata pursuant to Fed.R. Civ.P., Rule 50(a). Plaintiff brought this appeal.

## THE STANDARD FOR DIRECTED VERDICT

■ In his order directing a verdict in favor of defendant Zapata, Judge Parker found that "reasonable minds could not differ that any injuries received by the plaintiff were in no way caused by the vessel in question being unseaworthy, nor were the injuries caused by any negligence contributing to the accident in question." The "reasonable minds" test employed by Judge Parker is the correct standard for directing a verdict on an unseaworthiness claim. *Allen v. Seacoast Products, Inc.*, 623 F.2d 355, 359 (5th Cir. 1980); *Claborn v. Star Fish & Oyster Co.*, 578 F.2d 983, 987 (5th Cir. 1978). However, the standard to be applied to a Jones Act claim is more stringent. The court may direct a verdict or grant judgment n.o.v. on a Jones Act claim only when there is a *complete absence* of probative facts supporting the non-movant's position. *Gaspard v. Taylor Diving & Salvage Co., Inc.*, 649 F.2d 372, 374 n.2 (5th Cir. 1981); *Roberts v. Williams-McWilliams Co., Inc.*, 648 F.2d 255, 261 (5th Cir. 1981); *Allen v. Seacoast Products, Inc., supra* at 360. *See Boeing Company v. Shipman*, 411 F.2d 365, 370 (en banc) (distinguishing between the "complete absence of probative facts" test applicable to FELA and Jones Act claims, and the "reasonable minds" test applicable to other federal claims). After carefully reviewing the record below, we find that

---

1. Jurisdiction was also based on diversity of citizenship, 28 U.S.C. § 1332.

even under the stricter Jones Act standard, defendant Zapata is still entitled to a directed verdict because plaintiff failed to introduce a scintilla of evidence that defendant was negligent in not training and supervising him; or that a disorderly workroom, or unavailability or proper tools, caused the accident which led to his injuries.

THE EVIDENCE

### 1. *Lack of Supervision*

At trial, plaintiff Robinson testified that he had had only two weeks of off-shore welding experience prior to the time he began working for Zapata, and that Zapata's failure to provide such an inexperienced employee with any supervision or instruction in off-shore welding constituted negligence. But plaintiff also admitted at trial that when he applied for the job with Zapata, he stated on his application that he had had two *years*, not two weeks, of off-shore welding experience.[2]

On appeal, plaintiff does not claim that the failure to train or supervise an employee who actually did have two years off-shore experience could constitute negligence. Rather, Robinson argues that his statement on the application was a mistake, not a deliberate misrepresentation; that Zapata should have known that people make mistakes in filling out job applications; and that therefore, Zapata should not have relied upon Robinson's stated experience.

██ We disagree. It is irrelevant whether Robinson's misrepresentation of experience was deliberate or inadvertent. In either event, there is no duty on the part of Zapata to disbelieve its employees' claims of prior experience and training. Zapata was entitled to rely on these claims in hiring and assigning Robinson. Defendant could not have been negligent in failing to supervise or train an employee in off-shore welding when that employee clearly stated that he had had two years experience in off-shore welding. While a seaman's duty

to protect himself is slight, *Spinks v. Chevron Oil Co.*, 507 F.2d 216, 223 (5th Cir. 1975), the duty does exist. Certainly, Robinson had a duty to give an accurate account of his prior off-shore experience. Zapata was not negligent in relying on Robinson's representations and in not training him to fill a position for which he claimed to be fully qualified.

### 2. *Disorderly Work Place*

██ Plaintiff testified that when he "first saw it," the welding room of the *Lexington 26* was in a disorderly condition: oily rags were strewn on the floor and the welding lines were tangled. However, the day that Robinson first saw the welding room was three days prior to the day on which he was injured. On the day of the accident, according to plaintiff, the welding room was "clean," and the floor was "clean and dry." Moreover, plaintiff has never claimed that the steel plate which injured him fell off the welding table as a result of oily rags on the floor or tangled welding lines. Thus, there is no evidence that the welding room was in an unsafe condition at the time of plaintiff's accident, or that unsafe conditions, if any, caused his injury. *See Stevens v. East-West Towing Co. Inc.*, 649 F.2d 1104, 1108 (5th Cir. 1981). (The generally delapidated condition of a ship is not grounds for liability when there is no suggestion that the delapidated conditions were a proximate cause of plaintiff's injuries.)

### 3. *Lack of Proper Equipment*

Plaintiff claims that the steel plate from which he was cutting a circle fell off the welding table because it had not been properly secured. Robinson testified that the reason he neglected to secure the plate to the table was that the tools to do so were unavailable. Specifically, he claims that he was unable to find clamps in either the welding room or the tool-room of the *Lexington 26*.

**2.** The application—admitted into evidence at trial—asks, "How much offshore experience have you had?" Next to this question is written "2 yr."

However, Robinson also testified that he knew of "several simple ways," including tack welding, to attach the plate to the table. Nevertheless, he proceeded to cut the circle without using any of these other methods. When tools are close at hand which could safely perform a task, the seaman has a duty to use them. *Hussein v. Isthmian Lines, Inc.*, 405 F.2d 946, 950 (5th Cir. 1968). In this case, Robinson's own testimony establishes that he was negligent in failing to properly attach the plate to the table using methods well-known and readily available to him. Therefore, there is no evidence that the unavailability of equipment was a cause of the accident which resulted in his injury.

CONCLUSION

Trial courts should always hesitate before taking a case away from the jury, particularly a Jones Act case. Only in the comparatively rare instance where there is a complete absence of probative evidence to support plaintiff's Jones Act claims should a trial court direct a verdict in favor of defendant. This is one of those instances. Plaintiff Robinson introduced no evidence at all to prove that defendant Zapata was negligent, or that Zapata's negligence, or the unseaworthiness of the *Lexington 26*; if any, caused his injuries. On the contrary: Robinson's testimony gives rise to the inescapable conclusion that his own negligence was the sole cause of his injury. Under these circumstances, the district court was justified in directing a verdict in favor of defendant Zapata.

AFFIRMED.