Eugene V. THEZAN, Plaintiff-Appellant,

v.

MARITIME OVERSEAS CORPORA-TION, et al., Defendants-Appellees.

No. 82-3334
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

June 27, 1983.

Rehearing Denied Aug. 11, 1983.

---

Silvestri & Massicot, Frank A. Silvestri, New Orleans, La., for plaintiff-appellant.

Phelps, Dunbar, Marks, Claverie & Sims, Delos E. Flint, Jr., Clayton G. Ramsey, New Orleans, La., for Natalie Tankship.

Before RUBIN, JOHNSON, and WILLIAMS, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge.

This action arises from injuries sustained by appellant, Eugene Thezan, while serving as an officer and second engineer aboard the S/T OVERSEAS NATALIE, a vessel operated by the Natalie Tankship Corporation. Thezan filed suit in district court against his employer under the Jones Act, 46 U.S.C. § 688, on the grounds that his injuries were caused by the negligence of Natalie Tankship and the unseaworthiness of the S/T OVERSEAS NATALIE. Following a four-day trial, the jury returned a verdict finding the NATALIE a seaworthy vessel, but the Natalie Tankship Corp. negligent. The jury set Thezan's damages at $60,000, but found Thezan's own negligence made a 90% contribution to his injury, reducing his damage award to $6,000. The jury additionally awarded maintenance and cure in the amount of $10 per day for a period of 100 days. Thezan then filed motions for judgment notwithstanding the verdict, additur, and alternatively, for a new trial, all of which were denied. On appeal, Thezan argues (1) that the district court erred in failing to grant his motion for a judgment notwithstanding the verdict because the NATALIE was unseaworthy as a matter of law; (2) that the company's negligence was the sole cause of the accident and that Thezan could not have been contributorily negligent as a matter of law; (3) that the district court's response to written questions from the jury was improper; and (4) that the evidence did not support the amount of the jury's quantum and maintenance and cure awards. Finding no merits to any of these contentions, we affirm the judgment of the district court.

I. *Facts*

Eugene Thezan had served for eleven years as an officer and second engineer aboard the S/T OVERSEAS NATALIE, an oil tanker which transports oil through the Panama Canal to the Gulf Coast. Among his duties was to maintain the vessel's boiler system. This maintenance involves periodic cleaning which entails removing a number of bottom waterwall doors. Both parties agree that removal of these doors, which are made of steel and brick and weigh approximately 170 pounds, is an arduous job. On June 23, 1978, the NATALIE's chief engineer, Joseph Kapiko, ordered Thezan to shut down and clean the boilers. At the time of the order, four men were working overtime in the engine room who were available to assist Thezan with the removal of the waterwall door. The first assistant engineer, Jesse Sweet, who testified that he had helped Thezan in the past with the doors, was also available. The evidence also shows, however, that Thezan had alone removed the doors many times in the past. In any event, Thezan did not request assistance and proceeded to remove one of the doors alone. During the course of this work Thezan noticed an unusual sensation in his neck, and by the next morning was suffering severe pain in his neck and shoulder and had no feeling in his right leg. Medical examinations onshore in Panama City indicated that Thezan had sustained a herniated cervical disc.[1] He was

---

1. Medical testimony at trial indicated that Thezan had previously been suffering from a cervi- cal mylopathy, which was aggravated by the

operated on on June 30, and flown back to the United States to recuperate. On October 10, 1978, Thezan returned to duty as second engineer aboard the NATALIE. Seven months later, he quit and began work with another shipping company.

## II. *Unseaworthiness*

■ Thezan first argues that the trial court erred in its failure to grant his motion for a judgment notwithstanding the verdict with respect to the jury finding of the NATALIE's seaworthiness.[2] Specifically, he argues that the jury's finding that the employer was negligent was "inconsistent" with its finding that the vessel was not unseaworthy. Implicit in this claim is Thezan's assertion that the jury's finding of negligence on the part of Natalie Steamship Company was necessarily predicated upon a finding that the company had failed to provide Thezan with the manpower required to remove the boiler door safely. Because an inadequate or improperly manned vessel is considered unseaworthy as a matter of law, *Comeaux v. T.L. James & Co., Inc.,* 666 F.2d 294, 299 (5th Cir.1982), he asserts that judgment notwithstanding the verdict was proper.

■ A motion for a directed verdict or judgment notwithstanding the verdict on an unseaworthiness claim may be granted only where "reasonable minds could not differ" that the injuries received by the plaintiff were or were not caused by the vessel in question being unseaworthy. *Robinson v. Zapata Corp.,* 664 F.2d 45, 47 (5th Cir. 1981); *Allen v. Seacoast Products, Inc.,* 623 F.2d 355, 359 (5th Cir.1980). If reasonable men could arrive at a contrary verdict, denial of the motion was proper. In considering the motion, the court must view the evidence in the light most favorable to the opposing party.[3]

■ Neither side disputes that the machinery or equipment of the NATALIE was seaworthy. Thus, Thezan's conception of unseaworthiness is based solely upon his assertion that the vessel was improperly manned so that he received inadequate help. Uncontradicted evidence produced at trial indicated that the NATALIE satisfied the Coast Guard regulations with respect to crewing requirement aboard oil tankers.[4] The chief engineer Kapiko and the first assistant engineer Sweet testified that Thezan, as an officer and second engineer, had the authority to order men on his watch to assist him and that additional men, subject to his authority, were available at the time of the accident.[5] Thezan argues that it was the chief engineer's responsibility to provide him with adequate help in the form of a

herniated cervical disc.

2. The appellees contend that Thezan failed to move for a directed verdict at the conclusion of the case, thus precluding appellate review of this issue. Fed.R.Civ.P. 50(b). Our review of the record reveals that Thezan did move for a directed verdict at the close of appellee's case, but that his grounds for his motion were less than precise. Rule 50(a) of the Federal Rules of Civil Procedure requires that specific grounds be stated in a motion for a directed verdict. The purpose of this requirement is to apprise the trial court of the movant's position. *Ralston Purina Co. v. Parsons Feed & Farm Supply, Inc.,* 364 F.2d 57 (8th Cir.1966). Courts have held that technical precision is not necessary in stating grounds for the motion so long as counsel's argument made clear the defenses he was relying upon. *United States v. Fenix and Scisson, Inc.,* 360 F.2d 260, 266 (10th Cir.), *cert. denied,* 386 U.S. 1036, 87 S.Ct. 1474, 18 L.Ed.2d 599 (1966); *Moran v. Raymond Corp.,* 484 F.2d 1008, 1013 (7th Cir.), *cert. denied,* 415 U.S. 932, 94 S.Ct. 1445, 39 L.Ed.2d 490 (1973). While there is no doubt that the appellant's motion could have been more accurately stated, we find that it was sufficient to make the trial court aware of his position, thus preserving the issue for appeal.

3. The standard for granting judgment notwithstanding the verdict is the same as that governing directed verdicts. *O'Neil v. W.R. Grace & Co.,* 410 F.2d 908, 911 (5th Cir.1969).

4. The Coast Guard required that ten men be stationed in the Engineering Department. On the day of the accident, fourteen men were working in that capacity on the NATALIE.

5. Seven men were working in the engine room when the accident occurred. Six of the seven were subject to the authority of the second engineer, and the seventh, Sweet, testified that he had helped Thezan with the job of removing the door in the past and would have been available to assist on the day in question if he had been asked.

specifically assigned crewman at the time he ordered the work, and that Thezan himself did not have the authority to order men to assist him. He also disputes the appellee's assertion that adequate manpower was available.

Certainly the testimony presented at trial indicated that reasonable minds could arrive at a contrary verdict with respect to whether the NATALIE was improperly manned. In addition, we note that Thezan's argument—that ·the jury's finding that the defendant was negligent was based on the failure to provide Thezan with adequate assistance to remove the door—asks us to inquire into the "presumptions and inferences" that "flow from" the jury's finding of negligence. It is a cardinal principal of jurisprudence that we are not allowed to speculate as to the thought processes of the jury. Moreover, it is well-established that Jones Act negligence and unseaworthiness are two distinct claims, *Usner v. Luckenback Overseas Corp.*, 400 U.S. 494, 500, 91 S.Ct. 514, 518, 27 L.Ed.2d 562 (1971), and individual acts of negligence do not always create conditions of unseaworthiness. *See also Alverez v. J. Ray McDermott & Co., Inc.*, 674 F.2d 1037, 1041 (5th Cir.1982) (jury's findings of Jones Act negligence and no unseaworthiness were not inconsistent).[6] We cannot assume that the jury concluded that Thezan was ordered to do a job without assistance and that this constituted the negligence found by the jury. The jury could have found the negligence on the part of the employer for reasons other than lack of crew members to assist, since Thezan made other negligence claims not related to seaworthiness. There

is no requirement that because the jury returned a verdict finding negligence that it should have also returned a verdict finding unseaworthiness.

### III. Contributory Negligence

Thezan next complains that the district court improperly denied his motions for judgment notwithstanding the verdict or a new trial on the issue of contributory negligence. As discussed earlier, the jury awarded Thezan $60,000, but reduced this award by 90% under the comparative negligence doctrine because it found that Thezan was 90% contributorily negligent. Thezan argues that the appellee did not meet its burden of proof with respect to the affirmative defense of contributory negligence. Specifically, Thezan argues that he had no duty to request help in removing the boiler door, and that he cannot be held responsible for the chief officer's failure to assign personnel to assist him.

▮▮▮▮ In Jones Act cases, directed verdicts are possible "only in the comparatively rare instance where there is a complete absence of probative facts" to support the non-movant's position. *Robinson v. Zapata Corp., supra*, 664 F.2d at 49. *Accord, Robert v. Conti Carriers & Terminals, Inc.*, 692 F.2d 22, 27 n. 15 (5th Cir.1982); *Comeaux v. T.L. James & Co.*, 666 F.2d 294, 298 n. 3 (5th Cir.1982). We cannot agree that there was a "complete absence of probative facts" to support the jury's conclusion that Mr. Thezan himself was negligent.

While the seaman's duty to protect himself is slight, the duty does exist. *Bobb v. Modern Products, Inc.*, 648 F.2d 1051, 1056–57 (5th Cir.1981). Contributory negligence

---

**6.** Thezan relies heavily on a recent decision of this Court in *Comeaux v. T.L. James & Co., Inc.*, 666 F.2d 294 (5th Cir.1982), in which we found the plaintiff entitled to a directed verdict on the issue of unseaworthiness because of an inadequate crew assigned to assist him. In *Comeaux*, the plaintiff was normally assigned three deck hands and two boat hands to help him maintain lines associated with a floating dredge. On the day of his accident, all the hands had quit and the plaintiff complained to his supervisor that the dredging operation should cease until additional help could be secured. The only help offered to the plaintiff

was a galley hand with no experience as a deck or boat hand who was blind in one eye and who was assigned to take the wheel of the vessel the plaintiff had to use. Under these factual conditions there was "simply no evidence from which a jury could possibly fail to find the vessel unseaworthy due to defective crew." *Id.* at 299. In light of the testimony of the chief engineer and second assistant that men were available to assist Thezan if he had requested that help, there is evidence countering the assertion that the NATALIE's crew was inadequate.

is available to mitigate a vessel owner's liability when an injured seaman has been negligent in breaching a duty to act or refrain from acting. *Comeaux v. T.L. James & Co., supra,* 666 F.2d at 299. A seaman generally has no duty to find the safest way to perform his work. But where it is shown that there existed a safe alternative available of which he knew or should have known, a seaman's course of action can be properly considered in determining whether he was negligent. *Ceja v. Mike Hooks, Inc.,* 690 F.2d 1191, 1195 (5th Cir. 1982); *Joyce v. Atlantic Richfield Co.,* 651 F.2d 676, 682–83 (10th Cir.1981). *See also Robinson v. Zapata Corp., supra,* 664 F.2d at 49 (where seaman knew of "several simple ways"—well-known and readily available to him—to avoid the unsafe course, he had the duty to follow safe course of conduct). Additionally, factors such as age and experience can be considered in determining whether a seaman may properly be charged with a duty to select a safe course of conduct from among safe and unsafe alternatives. *Ceja v. Mike Hooks, Inc., supra,* 690 F.2d at 1195.

The evidence at trial indicated that Thezan had an in-depth knowledge of the proper way to remove the bottom waterwall door. He had been a second engineer for eleven years, and had himself removed the doors, without assistance, many times in the past. He was well aware of the potential danger involved in attempting their removal alone, but he at no time asked anyone for assistance. The jury obviously chose to believe the testimony of chief engineer Kapiko that Thezan had absolute control over his watch and the men working for him, and that he had the authority to order those men to help him. It also chose to believe that several men were available to help Thezan if he had requested help.

█ Thezan also complains that the district court erred in denying his motion for a new trial on the issue of his contributory negligence. The appropriate standard of

review for this Court to test the sufficiency of the evidence in Jones Act and unseaworthiness claims is whether there is a "reasonable evidentiary basis" for the jury's verdict. *Vallot v. Central Gulf Lines, Inc.,* 641 F.2d 347, 349–50 (5th Cir.1981). Where "there is an evidentiary basis for the jury's verdict, this Court's function is exhausted, and [the plaintiff] is not free to relitigate the factual dispute." *Manchack v. S/S OVERSEAS PROGRESS,* 524 F.2d 918, 919 (5th Cir.1975). The evidence discussed above indicates clearly that there was a "reasonable evidentiary basis" for the jury's verdict. *Loehr v. Offshore Logistics, Inc.,* 691 F.2d 758, 760 (5th Cir.1982); *McBride v. Loffland Bros. Co.,* 422 F.2d 363 (5th Cir. 1970). *See also Alverez, supra,* 674 F.2d at 1044 (jury finding defendant negligent, vessel seaworthy and plaintiff contributorily negligent in the amount of 90%).

█ Nor can we accept Thezan's claim that the jury "somehow" improperly viewed the accident as having resulted from Thezan's having "assumed the risk" of the removal of the boiler door without assistance. There was no mention at trial, either in the court's instructions or in closing argument for either side, concerning assumption of the risk. In the absence of any indication that the jury was "confused" or that its verdict was based on an assumption of the risk theory, we will not speculate and disturb the jury's finding.

### IV. *Jury Instructions*

Approximately mid-way through the jury's deliberations, the foreman sent the following written interrogatories to the Court:

3. "Could a specific repair or maintenance job be construed as a 'given task' within the context of the definition for unseaworthiness?"

4. "Same as question 3 except assume the specific repair is the removal of the water doors."

After conferring with counsel for both sides, the judge [7] sent the jury a copy of the

---

7. The judge who presided over the trial was unavailable, and a second district judge re-

sponded to the jury's questions.

court's original charge on seaworthiness with instructions to read it carefully in order to answer the questions. Thezan argues that it was prejudicial error for the court not to have responded to the questions in the affirmative. He contends that this "omission" confused the jury and gave it the impression that it could not find that the order to clean the boiler would constitute unseaworthiness.

The necessity, extent and character of additional instructions to the jury is a matter within the trial court's discretion. *Roberts v. Williams-McWilliams Co., Inc.,* 648 F.2d 255, 265 (5th Cir.1981). Where the given instructions are an adequate recounting of the law to the level that the jury can intelligently determine the questions presented, the court's refusal further to elaborate is not error. *Delancey v. Motichek Towing Service, Inc.,* 427 F.2d 897, 902 (5th Cir.1970). The trial court's instructions were correct, cogent, and adequate.[8] The instructions make it clear that lack of sufficient men to perform a task would constitute a finding of unseaworthiness. The only "task" at issue in this case was the cleaning of the boilers. The jury needed no further instructions to answer each of the questions.

## V. *Damages*

The jury found that Thezan reached his maximum cure as of October 9, 1978. This was the date that he resumed his employment as officer and second assistant engineer on the NATALIE. Thezan argues that, although he was able to return to work, his cervical problems still required neurological monitoring at the time of trial.

The record shows that when Thezan returned to work in October, 1978, he did not require additional medical care or treatment. He worked for Natalie Tankship for seven months at that time, and then he quit and began work with another shipping company. In February, 1981, Thezan had a heart attack, but was declared "fit for duty" in October of 1981. At the time of trial, Thezan conceded that he was still able to return to sea. Additionally, his employer at the time of his heart attack indicated that a job was available for Thezan as late as January, 1982. While Thezan seems to claim that he still suffers from the injury which is the subject of this suit, the jury could find otherwise on the evidence. A maintenance award will be upheld so long as there is an evidentiary basis for the jury's verdict. *Loehr v. Offshore Logistics, Inc., supra,* 691 F.2d at 761. Such an evidentiary basis was satisfied here.[9]

Thezan finally argues that the jury's award was inadequate. This Court will overturn a jury verdict for inadequacy only upon the strongest of showings. *Martin v. City of New Orleans,* 678 F.2d 1321, 1326 (5th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 1189, 75 L.Ed.2d 435 (1983). The size of the award is essentially a finding of fact, and we will interfere concerning damages only in extreme and exceptional cases where the award is "so gross . . . as to be contrary to right reason." *Bailey v. Southern Pacific Transportation Co.,* 613 F.2d 1385, 1390 (5th Cir.), *cert. denied,* 449 U.S. 836, 101 S.Ct. 109, 66 L.Ed.2d 42 (1980). "The function of reviewing courts with re-

---

8. The instructions were as follows:

"The duty to provide a seaworthy vessel also includes a duty to supply an adequate and competent crew. Even though the vessel owner provides a numerically adequate crew, the vessel may still be unseaworthy if too few men are assigned to a given task.

If therefore you find that the owner of this vessel did not provide an adequate crew or sufficient manpower to perform *the tasks required,* or if you find that the vessel was in any manner unsafe or in any manner unfit, or *if you find that too few men were assigned to*

a given task, then you may find that the vessel was unseaworthy and the shipowner liable, without any reference to the issue of negligence of the defendant or any of its employees." (emphasis added).

9. The amount of the maintenance to which an injured seaman is entitled is a question of fact, and will not be overturned unless clearly erroneous. *Caulfield v. AC & D Marine, Inc.,* 633 F.2d 1129, 1132 (5th Cir.1981). Thezan offered no evidence that the court's award of $10 per diem, a total of $1,000, was insufficient.

spect to damages awards ... is limited to resolving the question whether the trier of fact abused its discretion." *Hawkes v. Ayers,* 537 F.2d 836, 837 (5th Cir.1976). Here the jury's ultimate $6,000 award was the result of its reduction of a $60,000 finding of damages due to Thezan's contributory negligence. We do not consider the $60,000 itself either grossly inadequate, against the weight of the evidence, or reached by improper motive or consideration. Appellant's contentions were correctly submitted to a jury of his peers. It is not for us to upset the jury's solemn verdict on the record absent substantial evidence to support it or specific error.

The judgment of the district court is AFFIRMED.