999 F.2d 539
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Boyd L. CLINE, Plaintiff-Appellee (92-1139),
v.
UNITED STATES of America, Defendant/Counterclaim
Plaintiff-Appellant (92-1139) and
Defendant/Counterclaim
Plaintiff-Appellee (92-1309),
John DOE, Defendant,
Boyd L. CLINE; Ralph A. Posnik, Sr., Counterclaim Defendants,
Edward M. Bedikian, Counterclaim Defendant-Appellant (92-1309).
 Nos. 91-2370, 92-1309.
 United States Court of Appeals, Sixth Circuit.
 July 21, 1993.
As Amended Aug. 27, 1993.
 
 Before: JONES and GUY, Circuit Judges; and LIVELY, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Counterclaim Defendant-Appellant Edward M. Bedikian appeals from the district court's denial of his motion for judgment notwithstanding the verdict and motion for a new trial. A jury rendered a verdict in favor of the United States in which the jury assessed liability under 26 U.S.C. § 6672 (1988 & Supp. III 1991) against Bedikian for payroll taxes which were withheld from wages of employees of the Michigan Transportation Company ("MTC" or the "Company"), but not remitted to the United States. For the reasons set forth below, we affirm.
 
 I.
 A.
 
 2
 This case originated out of a complaint filed by Boyd L. Cline, MTC's Executive Vice President, seeking a refund of the $250 he paid to the Internal Revenue Service ("IRS") toward a 100% penalty assessed against him. The United States filed an answer and counterclaim seeking recovery of the full amount of taxes withheld from wages but not remitted to the government and joining Ralph A. Posnik, Sr., MTC's owner and President, as a counterclaim defendant. Thereafter, the United States amended its answer to assert a claim against Bedikian as a counterclaim defendant.
 
 
 3
 The claims and counterclaims were tried to a jury between September 10 and 23, 1991. The jury rendered a verdict in favor of Cline[1] and against Posnik[2] and Bedikian. The jury, through special interrogatories, found that Bedikian was a responsible person within the meaning of Section 6672(a)[3] during the last two quarters of 1984 and that his failure to remit withholding payments to the IRS was willful. The court denied Bedikian's motion for judgment notwithstanding the verdict and motion for a new trial.
 
 B.
 
 4
 MTC, located in Dearborn, Michigan, was a trucking company that primarily hauled specialized loads. Posnik was the President and sole shareholder of MTC from 1974 until voluntary bankruptcy proceedings were instituted on May 31, 1985. During that time period, Posnik was also Chairman of the Board of Directors.
 
 
 5
 Bedikian was the controller of MTC from 1978 until his resignation on January 25, 1985. As controller, Bedikian was the chief financial officer in the Company. His department was responsible for withholding payroll taxes from wages and preparing IRS Form 941 which reflects the amount of withholding collected and due the IRS. In addition, he supervised the preparation of financial statements, including various state and federal tax returns. Bedikian also served as Secretary of the Company. Although Bedikian disputed the issue, some evidence was presented to establish that Bedikian was appointed Treasurer in December, 1983. Bedikian was never a designated signatory on MTC checking accounts. Bedikian was never a shareholder or director of the Company.
 
 
 6
 MTC began experiencing financial difficulties in the early 1980s. By 1982, the Company experienced delinquent tax withholding obligations. On behalf of MTC, Bedikian entered into an installment agreement with the IRS through which MTC agreed to pay $5000 per month until the delinquency was satisfied. The Company satisfied that liability.
 
 
 7
 The Company experienced more severe financial difficulties in 1984. The 941 Forms filed for the first two quarters of 1984 evidenced an outstanding obligation. Bedikian signed these forms on behalf of MTC. Although 941 Forms were prepared and filed for the last two quarters of 1984, no money was remitted to the government to satisfy these obligations even though the accounting department deducted the appropriate amounts from employees' paychecks. The Company continued to meet payroll obligations despite its continuing financial decline. Payments were also made to other creditors during the time period in which withholding taxes were not remitted to the IRS.
 
 
 8
 Knowledge of the delinquency is not an issue in this case. At the latest, all three of the individuals who were parties to the original suit were aware of the outstanding obligation by June of 1984. The tax liability was discussed in numerous luncheon management meetings during the last half of 1984 and in meetings held in the office of the Company's attorneys. What the parties do dispute is whether Bedikian's control over corporate finances was significant enough to render him a responsible person. On this issue, the evidence was conflicting.
 
 
 9
 Bedikian steadfastly maintained that he had no authority whatsoever over payments of corporate debts. He claimed that every check remitted to a creditor needed Posnik's approval. Although Bedikian denied that he had ultimate authority to make payment decisions, he acknowledged that he participated in the decision-making process through which payments to creditors were allocated. Bedikian prepared a list of outstanding obligations, on a weekly basis, to review with Posnik. Bedikian was the only individual at MTC who had complete knowledge of the Company's financial posture. Yet, Bedikian did not include all outstanding obligations on the list. Rather, Bedikian presented Posnik with a list of eight to ten items which represented the most pressing obligations. Posnik was presented with lump sum figures which included all debts within a given category. Bedikian determined the priority in which to list the obligation on the basis of the pressure being applied by creditors for payment. Although Bedikian claimed that payroll taxes were always on the list of obligations to be paid, the taxes were not always his top priority.
 
 
 10
 Cline provided some support for Bedikian's testimony that Posnik ultimately made payment decisions. Cline further testified, however, that Bedikian exercised at least some independent authority regarding payments to creditors. On one occasion, Cline and Bedikian had a dispute over Bedikian's decision to pay a bill for a warranty item that had not been approved by Cline. Cline also testified that whenever he received a call from a creditor or a creditor came to the office regarding unpaid bills, he directed the creditors to Bedikian because Bedikian controlled the money.
 
 
 11
 Posnik's testimony totally contradicted Bedikian's contentions. According to Posnik, Bedikian, as the Company's controller, had complete authority over financial matters and had authority to order payment to any creditor. Posnik denied that he had to approve every check and stated that bills were frequently paid without his approval when he was out of the office. Further, although Posnik conceded that he directed Bedikian to pay payroll before any other obligations, he further instructed Bedikian that the payroll taxes were the second priority for payment. In fact, Posnik testified that he sent Bedikian two memos in 1984 or 1985 instructing Bedikian that payroll should be met first, withholding taxes second and pension obligations third. Posnik stated that if payments were made in any other order, the payments were made against his explicit instructions. In addition, Posnik offered that he assumed that Bedikian had paid the tax liability after a dispute between Bedikian and Cline in late 1984 over payment priorities. That dispute resulted in Posnik taking all financial responsibility away from Cline.
 
 
 12
 Doris Wagner's testimony provided some support for Posnik's assertion that Bedikian had authority to satisfy the tax liability. Wagner, Posnik's secretary and the keeper of the facsimile check signing machine, stated that Bedikian was responsible for paying and depositing taxes withheld from wages. In addition, Bedikian was the individual who informed her of the amount for which the check for withholding taxes should be made.
 
 
 13
 Finally, Martin J. Leavitt, MTC's attorney, testified that he became aware of the outstanding tax liability sometime in 1984. Leavitt stated that, at that time, he and Bedikian had an argument over the matter because, in Leavitt's view, Bedikian had been "hiding" the outstanding obligation by including the debt in a lump sum figure which also included general operating taxes. Furthermore, Leavitt testified that Bedikian had confided in him during the relevant time period that Bedikian did not always inform Posnik of debts that were not being paid because Posnik was out of the office to such a great extent.
 
 II.
 
 14
 In reviewing a district court's decision granting or denying a motion for judgment notwithstanding the verdict, the Court of Appeals applies the same standard as the district court applied in ruling on the motion. Collins v. United States, 848 F.2d 740, 742 (6th Cir.1988). The motion should not be granted unless, in considering all evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in the non-moving party's favor, reasonable minds could not differ as to the conclusions to be drawn from the evidence. Id. In ruling on a motion for judgment notwithstanding the verdict, the court may not weigh the evidence, pass on the credibility of the witnesses or substitute its judgment for that of the jury. Marsh v. Arn, 937 F.2d 1056, 1060 (6th Cir.1991); Collins, 848 F.2d at 742.
 
 
 15
 Section 6672(a) imposes personal liability for unpaid withholding taxes on "[a]ny person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax...." Section 6672 requires a two-step analysis to determine liability. First, the person must be deemed a "responsible person" under the statute. Second, the failure to remit payments to the government must be "willful." Gephart v. United States, 818 F.2d 469, 473 (6th Cir.1987).
 
 
 16
 The test for determining who is a responsible person under Section 6672 is a functional test which focuses on the degree of influence and control which the person exercises over the financial affairs of the corporation, particularly with respect to disbursements of funds and determining the priority of payments to creditors. Id. A person's duty to remit withholding payments to the government "must be viewed in light of his power to compel or prohibit the allocation of corporate funds. It is a test of substance, not form." Godfrey v. United States, 748 F.2d 1568, 1576 (Fed.Cir.1984). Any corporate officer or employee with the power and authority to avoid default in payments is a responsible person under Section 6672. Feist v. United States, 607 F.2d 954, 960 (Ct.Cl.1979). As stated in Gephart: "Essentially, liability is predicated upon the existence of significant, as opposed to absolute, control of the corporate finances." 818 F.2d at 473. The inquiry involves determining the persons who had the authority to control the process by which the employer decided to allocate funds to creditors in preference to its withholding obligations to the government. Godfrey, 748 F.2d at 1575.
 
 
 17
 In claiming that reasonable minds could not conclude that he was a responsible person, Bedikian primarily relies on the fact that he did not have corporate check signing authority. Although check signing authority is one factor to be considered in determining liability under Section 6672, the relevant inquiry is not simply whether the individual performed the ministerial function of signing a check but, rather, the individual's control over the decision-making process through which allocations to creditors are made. See id. Bedikian acknowledged that he significantly participated in this decision-making process. In fact, Bedikian's testimony established that he was the only individual in the Company who was completely informed of its financial status. Unless Bedikian included an outstanding obligation on his weekly list of bills that needed to be paid, Posnik would not be aware of the debt.
 
 
 18
 Bedikian argues, nonetheless, that the fact that he did not have ultimate authority to determine which creditors would be paid absolves him of liability. We have previously rejected an identical argument. In Gephart, the plaintiff presented evidence to establish that although he reviewed the accounts payable to determine which bills needed to be paid, a corporate officer had final authority in determining which obligations would be satisfied. In concluding that the plaintiff was a responsible person, we stated: "It is not necessary that an individual have the final word as to which creditors should be paid in order to be subject to liability under this section. Rather, it is sufficient that the person have significant control over the disbursement of funds." Gephart, 818 F.2d at 475.
 
 
 19
 Based on the evidence presented, a reasonable juror could conclude that Bedikian had significant control over corporate finances. Thus, the district court did not err in denying Bedikian's motion for a judgment notwithstanding the verdict on this ground.
 
 
 20
 Bedikian next contends that even assuming the evidence established that he was a responsible person within the framework of Section 6672, the court abused its discretion in denying his motion for judgment notwithstanding the verdict because he did not willfully fail to pay over the taxes. Willfulness is established, for purposes of Section 6672, if a responsible person makes a voluntary, knowing and intentional choice to pay creditors other than the government or engages in a course of conduct with a reckless disregard as to whether the taxes are paid to the government. Collins, 848 F.2d at 742; Calderone v. United States, 799 F.2d 254, 259-60 (6th Cir.1986). No intent to defraud or deprive the United States of taxes withheld from wages need be proven, nor bad or evil motive be present, in order to impose Section 6672 liability. McGlothin v. United States, 720 F.2d 6, 8 (6th Cir.1983).
 
 
 21
 Bedikian contends that because he impressed upon Posnik the need to pay the taxes and ultimately resigned because the taxes were not paid, his actions were not willful. Bedikian asserts that his lack of power to overrule any directive from Posnik insulates him from liability. In essence, Bedikian claims that he was merely acting under Posnik's directive and, therefore, cannot be subject to liability under Section 6672.
 
 
 22
 Several courts have considered whether a responsible person who is acting under orders from his supervisor not to pay withholding taxes is released from Section 6672 liability. The courts have consistently answered the question in the negative. For example, in Collins, the plaintiff argued that his failure to remit payments was not willful because he relied on the majority shareholder's promise to supply all necessary working capital in failing to remit payment. In fact, the plaintiff attempted to send a check to pay the obligation, but the majority shareholder stopped payment. During the same time frame, however, the plaintiff directed payments of wages and payments to suppliers. In determining that Collins acted willfully, we stated: "Undoubtedly, Collins presented a sympathetic figure at trial. But because the withheld taxes were trust funds, his reliance upon [the shareholder's] promise to cover the taxes makes his conduct no less willful, within the contemplation of the statute." 848 F.2d at 742. Accord Gephart, 818 F.2d at 475 (responsible person who follows directives of supervisor not to pay withholding taxes acts at his peril).
 
 
 23
 Other circuits have reached similar conclusions. For example, in Howard v. United States, 711 F.2d 729 (5th Cir.1983), the plaintiff claimed that his failure to remit taxes was not willful because he was only obeying orders from his superior. He argued that his actions were not voluntary and, therefore, he was not personally at fault within the meaning of Section 6672 for the failure to pay. The Fifth Circuit disagreed, stating, "... Howard had a choice. He could have paid the taxes, accepted the consequences, and thus avoided the penalty. Neither his discomfort over not paying the taxes, nor his desire to see them paid, makes his failure to pay any the less willful." 711 F.2d at 735. Cf. Domanus v. United States, 961 F.2d 1323, 1324-25 (7th Cir.1992) (responsible person's actions willful even though he was acting on instructions from president of the company not to remit withholding taxes while simultaneously ensuring payment to other creditors); Morgan v. United States, 937 F.2d 281, 285-86 (5th Cir.1991) (responsible person does not cease to be willful because he is ordered not to pay withholding taxes).
 
 
 24
 Similarly, herein, although we sympathize with Bedikian's predicament, neither Bedikian's admitted concern over the non-payment of the withholding taxes nor his ultimate resignation provide a sufficient basis on which to absolve Bedikian of Section 6672 liability. We must, therefore, affirm the order of the district court denying Bedikian's motion for a judgment notwithstanding the verdict.
 
 III.
 
 25
 Bedikian urges two grounds on appeal to support his contention that the trial court erred in denying his motion for a new trial. First, Bedikian contends that the verdict was against the great weight of the evidence. Second, Bedikian argues that the court's instructions to the jury so prejudiced the proceedings that a new trial is warranted.
 
 
 26
 In reviewing an order denying a motion for a new trial, the appellate court reviews the ruling for an abuse of discretion. The appellate court is "limited to examining the evidence produced at trial to determine whether the district court's determination that the evidence does not 'preponderate heavily against the verdict' is a clear and manifest abuse of discretion." United States v. Ashworth, 836 F.2d 260, 266 (6th Cir.1988) (citation omitted). The appellate court does not reweigh the evidence nor does it consider the credibility of the witnesses. Id. "Abuse of discretion is defined as a definite and firm conviction that the trial court committed a clear error of judgment." Logan v. Dayton Hudson Corp., 865 F.2d 789, 790 (6th Cir.1989).
 
 
 27
 The evidence does not support a conclusion that the district court abused its discretion in denying Bedikian's motion for a new trial. As noted previously, the parties presented sharply conflicting evidence regarding Bedikian's authority to control corporate finances. In light of Posnik's testimony that Bedikian did have the authority to authorize payments and that payments were approved by individuals other than himself, the testimony of Martin Leavitt that Bedikian did not always inform Posnik of outstanding obligations and Bedikian's authority to make initial determinations regarding the order in which obligations should be satisfied, we cannot say that the district court committed a clear error in judgment in denying Bedikian's motion for a new trial.
 
 
 28
 Bedikian also contends that a new trial is warranted on the ground that the jury was prejudiced by the court's instruction on willfulness. A substantial and prejudicial error in even a single jury instruction can be grounds for reversal. Miller v. Utica Mill Specialty Mach. Co., 731 F.2d 305, 307 (6th Cir.1984). In determining whether reversal is appropriate, "[t]he critical inquiry ... is 'whether the instructions as a whole provide the jury with sufficient guidance concerning the issues to be tried.' " Fryman v. Federal Crop Ins. Corp., 936 F.2d 244, 248 (6th Cir.1991) (quoting Bagherzadeh v. Roeser, 825 F.2d 1000, 1003 (6th Cir.1987) (quoting Teal v. E.I. DuPont de Nemours & Co., 728 F.2d 799, 802 (6th Cir.1984))); see also Clarksville-Montgomery County Sch. Sys. v. United States Gypsum Co., 925 F.2d 993, 1003 (6th Cir.1991) (jury instructions must be considered as a whole).
 
 
 29
 The trial court instructed the jury on the issue of willfulness as follows:
 
 
 30
 For the purposes of this case, the term "wilfully," means only that the act of failing to pay over the taxes was voluntarily, consciously and intentionally done. If the responsible person consciously, voluntarily, and intentionally used the funds which were withheld, or caused them to be used for purposes other than payment of taxes, he is deemed to have acted wilfully.
 
 
 31
 J.A. at 793.
 
 
 32
 Bedikian argues that the court's failure to include an element of personal fault as a predicate upon which to find willfulness was prejudicial error. Although the Supreme Court, in Slodov v. United States, 436 U.S. 238, 254 (1978), concluded that Congress did not intend that Section 6672 liability would be imposed without personal fault, it is unreasonable to assume that an element of personal fault would add substantially to an instruction that required the jury to determine that an individual acted voluntarily, consciously and intentionally before liability could be imposed. Since the jury was provided with sufficient guidance in determining willfulness, the court did not abuse its discretion in refusing to include an element of personal fault in the instructions to the jury.
 
 
 33
 Bedikian also argues that the court erred in refusing to instruct the jury that it was necessary for Bedikian to "deliberately decide" to use available corporate funds to pay creditors other than the United States in order to impose Section 6672 liability. In this regard, Bedikian relies on this Circuit's unpublished decision in Nolan v. United States, No. 86-5882 (6th Cir. Sept. 22, 1987) (per curiam). Bedikian misinterprets the basis for the Nolan decision. In Nolan, the court originally instructed the jury that what was required was a voluntary, conscious and intentional use of trust funds for purposes other than payment of taxes; "that the only thing that need be shown was that [the plaintiff] made the deliberate choice to pay other creditors instead of paying the government." Id. Thereafter, the court summarized the criteria needed to impose liability, but omitted any reference to voluntary, conscious or intentional conduct and to a deliberate choice. In reversing, we held "[t]his summary omits the requirement that Nolan be found to have made a deliberate choice; under this language he would have acted willfully even though he was unaware that he was paying the partnership instead of the government." Id. Our decision rested not on the omission of "deliberate" per se but, rather, the omission of any language which would evidence that a knowing choice was made.
 
 
 34
 Furthermore, reviewing the instruction in the case before us now as a whole, it is clear that the court's instructions provided the jury with sufficient guidance concerning the issues to be determined. The court specifically instructed the jury that in order to assess liability, two elements needed to be present: the individual must have had knowledge of the unpaid taxes; and the responsible person must have used corporate funds, or caused them to be used, to pay other creditors despite the knowledge of the outstanding tax obligation. The instruction, by its plain language, requires some type of deliberate conduct. As noted in Jones v. Consolidated Rail Corp., 800 F.2d 590, 592 (6th Cir.1986), "It is not error to refuse to give a requested instruction that correctly states the law, as long as the instructions actually given fairly and adequately cover the material issues." Accord Clarksville-Montgomery County, 925 F.2d at 1003 ("A jury instruction which states the law with substantial accuracy and fairly submits the issues to the jury will not provide grounds for reversal.").
 
 
 35
 Bedikian also contends that the court erred in providing supplemental instructions to the jury in response to its request for clarification of the term "truthfully account for" taxes. The court had instructed the jury that a responsible person under Section 6672 means any person hired to perform any one of the three functions, that is to collect, truthfully account for, or pay over taxes. In response to an inquiry requesting clarification on the term, the court instructed the jury as follows:
 
 
 36
 [J]ust give those words the ordinary meaning that they have. You can read that statute, that Section 6672, and just give that phrase "truthfully account for" its ordinary meaning. There's nothing special about the meaning as it's contained in the statute. So you may want to analyze the word separately, put them together into that phrase. I cannot give you any further elaboration on that particular term.
 
 
 37
 J.A. at 803.
 
 
 38
 In general, the form and extent of jury instructions are matters within the discretion of the trial court. Price v. Glosson Motor Lines, 509 F.2d 1033, 1036 (4th Cir.1975). The necessity, extent and character of supplemental instructions is also a matter within the court's discretion. Thezan v. Maritime Overseas Corp., 708 F.2d 175, 182 (5th Cir.1983), cert. denied, 464 U.S. 1050 (1984). As the Supreme Court has noted:
 
 
 39
 Once the judge has made an accurate and correct charge, the extent of its amplification must rest largely in his discretion. The trial judge, in the light of the whole trial and with the jury before him, may feel that to repeat the same words would make them no more clear, and to indulge in variations of the statement might well confuse.
 
 
 40
 United States v. Bayer, 331 U.S. 532, 536 (1947).
 
 
 41
 In arguing that the trial court erred in giving its supplemental instruction, Bedikian speculates that the supplemental instruction improperly permitted the jury to focus on a factor that was not at issue in the case, that is, whether Bedikian properly recorded the numbers provided to the government. A review of the supplemental instruction, however, reveals that the instruction de-emphasized the legal significance of the term "truthfully account for." The court specifically instructed the jury to give the term its ordinary meaning.
 
 
 42
 Furthermore, the jury was provided with a verbatim copy of the court's instructions. Under similar circumstances, the Fifth Circuit concluded that a trial court's refusal to elaborate on an issue in response to a jury inquiry was not reversible error because the instructions given provided the jury with "an adequate recounting of the law to the level that the jury [could] intelligently determine the question presented." Thezan, 708 F.2d at 182. The Tenth Circuit reached a similar conclusion in Kloepfer v. Honda Motor Co., 898 F.2d 1452, 1454 (10th Cir.1990), in holding that the trial court's refusal to elaborate on the term "user" in a products liability action was not error because the requested information was contained in the written charge submitted to the jury.
 
 
 43
 The jury in this matter was provided with a written copy of the court's instructions. The instructions accurately and fairly represented the requirements for determining whether Bedikian was a responsible person and whether he willfully failed to pay over the taxes. Thus, the district court did not abuse its discretion by failing to provide further amplification in response to the jury inquiry.
 
 
 44
 As a final matter, Bedikian contends that the trial court committed reversible error in granting the United States' pretrial motion in limine excluding an IRS determination that Bedikian was not a responsible person. Bedikian did not, however, renew his objection to the court's ruling at trial. A ruling on a motion in limine is characterized as an "advisory opinion subject to change as events at trial unfold." Moore v. General Motors Corp., Delco Remy Div., 684 F.Supp. 220, 220 (S.D.Ind.1988) (quoting Sales v. State Farm Fire & Casualty Co., 632 F.Supp. 435, 436 (N.D.Ga.1986)). In order to preserve a matter for appellate review, it is necessary to address the issue raised by the motion in limine during the trial on the merits to provide the trial court with an opportunity to reconsider its ruling in light of actual, rather than hypothetical, circumstances. Hendrix v. Raybestos-Manhattan, Inc., 776 F.2d 1492, 1504 (11th Cir.1985); United States v. Traylor, 656 F.2d 1326, 1333 n. 6 (9th Cir.1981). As a result, we hold that Bedikian waived this issue on appeal.
 
 
 45
 Even assuming that Bedikian had properly preserved the issue for appeal, Bedikian has not established that the exclusion of the evidence was an abuse of the trial court's discretion. Therefore, in the alternative, we hold that the trial court acted within its discretion in determining that the letter was not relevant to its assessment of whether Bedikian was liable under Section 6672, and that introduction of the evidence could mislead or confuse the jury.
 
 
 46
 AFFIRMED.
 
 
 
 [1]
 The United States appealed the court's denial of its motion for judgment notwithstanding the verdict in the Cline case. Although consolidated for purposes of trial, the appeals proceeded separately
 
 
 [2]
 Posnik did not appeal the verdict entered against him on the United States' claims
 
 
 [3]
 Section 6672(a) states, in pertinent part:
 Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.