USCA1 Opinion

 

 [NOT FOR PUBLICATION] UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT ____________________ No. 95-2212 KENNETH J. LEWIS, Plaintiff, Appellant, v. PACIFIC-GULF MARINE, INC., Defendant, Appellee. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Douglas P. Woodlock, U.S. District Judge] ___________________ ____________________ Before Selya, Circuit Judge, _____________ Campbell, Senior Circuit Judge, ____________________ and Boudin, Circuit Judge. _____________ ____________________ Thomas J. Boyle with whom Law Offices of Thomas J. Boyle were on ________________ ______________________________ briefs for appellant. Brian B. Kydd with whom Kneeland & Kydd was on brief for _______________ ________________ appellee. ____________________ August 2, 1996 ____________________ 1 Per Curiam. Kenneth Lewis was injured while welding on ___________ 2 the M/V NOSAC RANGER, an automobile-carrying ship. He now 3 appeals from the judgment entered against him after a jury 4 trial on his negligence and unseaworthiness claims against 5 Pacific Gulf Marine, a Louisiana corporation that owned and 6 operated the ship. He raises several objections to the jury 7 instructions and complains of the failure to grant him a new 8 trial. After considering all claims of error, we affirm. 9 The relevant events are straightforward although there 10 is some conflict in the testimony as to details. Lewis went 11 aboard the NOSAC RANGER as a licensed third assistant 12 engineer on July 7, 1990. He had extensive experience in 13 welding, but had done little welding on ships. As third 14 assistant engineer he was expected to do some welding. In 15 fact, he completed several welding tasks on the ship, 16 including an overhead weld. On August 8, 1990, Lewis' 17 supervisor, First Assistant Engineer Donald Ricciuti, 18 assigned him the task of welding a bracket to the ceiling of 19 the ship's workshop to steady a drill press. Lewis testified 20 that he requested assistance when Ricciuti assigned him the 21 job, while Ricciuti testified Lewis did not, but that he 22 would have assigned an assistant if asked. In any event, 23 Ricciuti did not assign anyone to help Lewis. 24 To weld the bracket, Lewis needed to be able to reach 25 the ceiling. He placed a stepladder beside the drill press, -2- -2- 1 climbed to the third rung, and stood with one foot on the 2 ladder and the other on a metal bench beside it. He worked 3 on the task for nearly three hours. He had some trouble 4 welding, apparently either because he had set the welding 5 machine to deliver too much current or because the vibration 6 of the ship made it difficult to hold the welding tool the 7 proper distance from the metal. While attempting to complete 8 the weld, he lost his balance and fell backward to the deck 9 some three feet below, injuring his back. 10 In a complaint filed in January 1993, Lewis alleged that 11 his injuries resulted from the defendant's negligence and 12 that the vessel was unseaworthy in several respects. As a 13 basis for both claims, he asserted that the ship's workshop 14 was dangerously cluttered, and that the defendant furnished 15 him with defective or unsuitable equipment, failed to provide 16 him with adequate help, and failed adequately to supervise 17 him. After a five-day trial, the jury returned a verdict for 18 the defendant. The trial judge denied a timely filed motion 19 for a new trial. 20 1. On appeal, Lewis concentrates on the district 21 judge's answer to a question the jury asked during 22 deliberations. The jury asked: "Would lack of supervision by 23 a superior officer constitute negligence by the defendant? 24 E.G., not inspecting Mr. Lewis' progress." The judge heard 25 argument from the parties and then instructed the jury that -3- -3- 1 whether Ricciuti's conduct was negligent depended on the 2 relative responsibilities of Lewis and his supervisors. The 3 judge directed the jury to engage in a "weighing of 4 respective duties of the parties," by considering what 5 responsibilities Lewis assumed as a third assistant engineer, 6 and considering whether in light of those responsibilities 7 Ricciuti should have supervised him more carefully. Neither 8 party objected after the instruction was given. 9 The general raise-or-waive rule for objections to jury 10 instructions applies to a court's answer to a question asked 11 by the jury during deliberations. See Smith v. Massachusetts ___ _____ _____________ 12 Inst. of Technology, 877 F.2d 1106, 1109-10 (1st Cir.), cert. ___________________ _____ 13 denied, 493 U.S. 965 (1989). Because Lewis' counsel failed ______ 14 to object after the new instructions were given and before 15 the jury retired to deliberate further, we review the 16 instruction only for plain error. Id. ___ 17 In all events, Lewis' basic position is wrong. His 18 proffered alternative answer to the question, a bare "yes," 19 is at least potentially misleading: whether a failure to 20 supervise an employee in the conduct of a particular task 21 constitutes negligence depends on whether the degree of 22 supervision was reasonable in the circumstances. Cf. ___ 23 Robinson v. Zapata Corp., 664 F.2d 45, 48 (5th Cir. 1981). ________ ____________ 24 As the proffered alternative instruction was incorrect, the -4- -4- 1 judge was under no obligation to give it. Parker v. City of ______ _______ 2 Nashua, 76 F.3d 9, 12 (1st Cir. 1996). ______ 3 Lewis is also mistaken in asserting that the judge's 4 answer constituted an instruction on the "primary duty rule," 5 a doctrine that exonerates an admiralty defendant if the 6 plaintiff's injury arose from the plaintiff's own breach of a 7 contractual duty to the employer. Lewis argues that the 8 doctrine may be applied only when an employee is in a 9 supervisory position and that it was wrongly applied to him. 10 Although the judge borrowed language from a decision 11 involving the primary duty rule, see Bernard v. Maersk Lines, ___ _______ _____________ 12 Ltd., 22 F.3d 903, 907 (9th Cir. 1994), he did not give a ____ ___ 13 "primary duty" instruction here. 14 Rather, the judge said that Ricciuti's duty to supervise 15 Lewis depended on what Ricciuti could reasonably have 16 expected Lewis to accomplish without supervision--and what 17 Ricciuti could reasonably expect naturally depended on the 18 scope of Lewis' duties as third assistant engineer as well as 19 his former welding experience. The question was not, as 20 Lewis suggests, whether Ricciuti had a duty to supervise 21 Lewis, but rather what the scope of the duty was and whether 22 in these particular circumstances the duty was breached. The 23 instruction explained the problem and offered a rational 24 framework for answering it. The instruction was certainly 25 not plain error, if error at all. -5- -5- 1 2. Lewis also argues that the judge erred in making 2 the following statement (the emphasis is ours) and in denying 3 Lewis' related later motion to grant a new trial to hear 4 contrary evidence: 5 If, on the other hand, you conclude that the breach of 6 or the failure to provide supervision to a person who is 7 an experienced welder who is brought onto the vessel to _________________________________ 8 do welding, who conducts welding without direct ___________ 9 supervision under other circumstances, is not one of 10 those set of circumstances which deprives someone of the 11 care or the seaworthy vessel that he's entitled to, then 12 you'll answer this question "no". 13 Lewis contends that the reference to his having been 14 hired to do welding introduced a new issue into the case on 15 which there had been no evidence at trial, and which he had 16 no opportunity to litigate. This claim is a perfect example 17 of why it is necessary to explain to the judge the basis of 18 the objection. Whether the comment was merely a slip or 19 reflected the judge's assessment of the evidence on record, 20 any error could easily have been cured had a timely objection 21 to the underlined phrase brought the matter to the judge's 22 attention. 23 We will assume arguendo that the failure to object does ________ 24 not preclude an appeal on the district court's post-verdict 25 denial of the motion for a new trial based on newly 26 discovered evidence. But such a motion requires, among other 27 requisites, that the evidence "could not by due diligence 28 have been discovered earlier by the movant" and that "it 29 would probably change the result if a new trial is granted." -6- -6- 1 Nickerson v. G.D. Searle & Co., 900 F.2d 412, 417 (1st Cir. _________ __________________ 2 1990); and we review the denial of a new trial under an abuse 3 of discretion standard. Raymond v. Raymond Corp., 938 F.2d _______ ______________ 4 1518, 1522 (1st Cir. 1991). 5 Lewis' "newly discovered evidence" is simply an 6 affidavit stating that welding is not ordinarily a 7 contractual duty of a third assistant engineer. This 8 evidence cannot justify a new trial because it should have 9 been discovered before or during trial. The defendant 10 elicited testimony to show that the position involved 11 welding, that Lewis was a certified welder, and that Lewis 12 represented himself as an accomplished welder when he came on 13 board the ship. Lewis thus had clear notice that his own 14 employment duties and welding experience were at issue. 15 Further, even if the evidence could not have been 16 discovered through due diligence, it was unlikely to have led 17 to a different result if introduced at trial. The judge 18 instructed the jury that the scope of Lewis' duties as a 19 third assistant engineer was a factor to consider in 20 determining whether Ricciuti negligently supervised Lewis. 21 The jury had before it testimony that the job involved 22 welding and that Lewis was known to be a competent welder. 23 Additional evidence showing that welding was not one of the 24 central duties of an engineer would have been relevant but 25 not outcome-determinative. -7- -7- 1 3. Lewis' other attacks on the instructions require 2 only brief comment. Lewis objected below to the judge's 3 failure to give two of his requested instructions on 4 unseaworthiness. He wanted the judge to give additional 5 instructions explaining that assigning too few people to a 6 particular task can create an unseaworthy condition, and also 7 that otherwise seaworthy equipment can be unseaworthy if used 8 improperly. Cf. Johnson v. Offshore Express, Inc., 845 F.2d ___ _______ ______________________ 9 1347, 1354 (5th Cir.), cert. denied, 488 U.S. 968 (1988) _____ ______ 10 (manpower); Allen v. Seacoast Prods., Inc., 623 F.2d 355, _____ ______________________ 11 360-61 (5th Cir. 1980) (equipment). 12 Taking the instructions as a whole, the trial judge 13 accurately stated the law and adequately explained the 14 plaintiff's theories of unseaworthiness. The judge 15 repeatedly stated that lack of adequate personnel or proper 16 equipment could constitute unseaworthiness, and explained 17 that the manpower and equipment had to be sufficient to 18 "permit[] [the jobs ordered] to be done with what we will 19 call an adequate setup. . . ." The jury was certainly 20 informed that inadequate manpower or equipment could render a 21 vessel unseaworthy. See Veranda Beach Club Ltd. Partnership ___ ___________________________________ 22 v. Western Sur. Co., 936 F.2d 1364, 1384 (1st Cir. 1991). ________________ 23 Lewis also contends that the court erred by giving an 24 "unavoidable accident" instruction, a type of instruction 25 that has been criticized as confusing, because it may -8- -8- 1 misleadingly suggest that a plaintiff must prove fault to 2 prevail on an unseaworthiness claim. See Lowry v. A/S D/S ___ _____ _______ 3 Svendborg, 396 F.2d 850, 853 (3d Cir. 1968). But again _________ 4 Lewis' claim of error arises from a misunderstanding of the 5 trial judge's instruction. 6 What the judge actually said was that "the mere 7 happening of an accident does not in and of itself 8 demonstrate that there is unseaworthiness." This merely 9 restates the plaintiff's burden to prove the existence of an 10 unseaworthy condition that caused the accident. The judge 11 did not suggest that Lewis had to prove fault to recover on _____ 12 his unseaworthiness claim, and in fact the judge stated 13 clearly in his instructions that liability for 14 unseaworthiness does not depend on fault. 15 Finally, Lewis objects to an instruction that the jury 16 would have to agree unanimously "as to the condition that 17 constituted either negligence or unseaworthiness in the 18 vessel." But only a perfunctory two-sentence argument is 19 made in Lewis' appeal brief on this issue, and it is 20 insufficient to preserve the point for review. United States _____________ 21 v. Zannino, 895 F.2d 1, 17 (1st Cir.), cert. denied, 494 U.S. _______ _____ ______ 22 1082 (1990). It is worth adding that Lewis did not object to 23 the instruction when it was given. 24 Affirmed. ________ -9- -9-